[Cite as *In re A.B.*, 2017-Ohio-5776.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

IN THE MATTER OF: A.B., et al.                   :
                                                                      CASE NO. CA2016-11-021
                                                 :
                                                                      O P I N I O N
                                                 :                    7/10/2017

                                                 :

APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2013-3081

Christine D. Tailer, P.O. Box 14, Georgetown, Ohio 45121, for appellant, M.J.

Zachary A. Corbin, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for appellee, Brown County Children's Services

R. Aaron Maus, 302 East Main Street, Batavia, Ohio 45103, for W.B.

Julie D. Steddom, 120 Main Street, Ripley, Ohio 45167, for A.B.

**S. POWELL, P.J.**

{¶ 1}  This appeal involves the juvenile court's legal custody determination regarding four of M.J.'s ("Mother") five children; namely, A.B., born June 25, 2012, L.B., born August 24, 2010, S.B., born July 8, 2009, and J.B., born January 18, 2007.  The father of three of the children at issue, W.B. ("Father"), did not file an appeal in this matter.  The father of the remaining child is deceased.  For reasons outlined in this appeal, we affirm the juvenile

court's decision.

{¶ 2} On May 22, 2013, the Brown County Department of Job and Family Services ("BCDJFS") filed a complaint alleging all eight children under Mother and Father's care were abused, neglected, and dependent.[1] According to the affidavit attached to the complaint, these allegations arose after another of Father's children, Sa.B., who was then just three years old, climbed out of a window of Mother's one-bedroom apartment where he was then discovered by a neighbor approximately 30 minutes later. At the time this incident occurred, it is undisputed that Father was caring for the child while Mother was at work. It is also undisputed that BCDJFS was instrumental in locating the apartment for Mother after she reported she was homeless, pregnant, and struggling to care for her other four children.

{¶ 3} After the police were called to the scene, an investigator with BCDJFS responded to Mother's apartment and observed the home to be cluttered with trash, clothes, and other items strewn throughout. The investigator further noted significant concerns regarding the children's cleanliness and hygiene. In total, although BCDJFS intended the apartment to be just for Mother and her then four children, eight children and three adults, at one point, had lived in the one-bedroom apartment, including Father's wife, An.B. ("Wife"), although she and Father had apparently separated. Father was later charged with child endangering and all eight children were placed in the temporary custody of BCDJFS. A case plan was also established and a guardian ad litem was appointed. As the guardian ad litem later testified when asked about the status of the children living in this apartment, "many animals are better cared for in terms of hygiene than these children were."

{¶ 4} On July 15, 2013, the juvenile court held an adjudication hearing, during which

---

1. Beginning in 2002, this is the third instance where BCDJFS was involved with Mother, Father, and their respective children. However, for purposes of this appeal, unless otherwise applicable, we will limit our review to matters occurring after BCDJFS filed its complaint in 2013.

time the parties stipulated to the dependency of the eight children born to Mother, Father, and Wife. Thereafter, on December 16, 2013, BCDJFS filed a motion requesting legal custody of A.B. be granted to her foster parents, Mr. and Mrs. Gray (collectively, the "Grays"). That same day, BCDJFS also filed a motion requesting legal custody of J.B. be granted to her foster parents, Mr. and Mrs. Black (collectively, the "Blacks"). Approximately two months later, on February 27, 2014, BCDJFS filed two additional motions requesting legal custody of L.B. and S.B. be granted to their foster parents, Mr. and Mrs. White (collectively, the "Whites"). It is undisputed that the Grays, the Blacks, and the Whites had all filed a statement of understanding with the juvenile court as required by R.C. 2151.353(A)(3).[2]

{¶ 5} The juvenile court held a five-day disposition hearing before a juvenile court magistrate that ultimately concluded on November 25, 2014. During this hearing, the magistrate heard extensive testimony regarding the children's hygiene, general cleanliness, and issues with the one-bedroom apartment where they had, at least periodically, lived with Mother, Father, and Wife, including the fact that the apartment had been infected with bedbugs and roaches. After taking the matter under advisement, on March 31, 2015, the magistrate issued its decision granting BCDJFS' motions awarding legal custody of the children to their respective foster parents, the Grays, the Blacks, and the Whites. In so holding, the magistrate determined Mother, Father, and Wife were unfit to properly care for any of the eight children living in Mother's one-bedroom apartment since they "did not provide hygienic cleanliness for the children." The magistrate further found that "the condition of the residence was intolerable for the well-being of the children" and that they "did not alleviate the harmful condition of the children," despite repeated help from BCDJFS.

{¶ 6} On April 6, 2015, Mother filed objections to the magistrate's decision. Several

---

2. For the purposes of this opinion we have changed the names of the foster families in keeping with supreme court guidelines to avoid references likely to reveal the identities of the juveniles.

months later, on October 19, 2015, Mother filed a memorandum in support of her objections to the magistrate's decision. Approximately one year later, on October 21, 2016, the juvenile court issued a decision overruling Mother's objections to the magistrate's decision, thereby affirming and adopting the magistrate's decision in its entirety. Mother now appeals from the juvenile court's decision, raising seven assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO MEET ITS BURDEN OF PROOF AND AS SUCH THE AWARD OF LEGAL CUSTODY TO OTHERS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} In her first assignment of error, Mother argues the juvenile court's decision to grant legal custody of the four children at issue to the Grays, the Blacks, and the Whites, three nonrelative families, was not supported by a preponderance of the evidence and was otherwise against the manifest weight of the evidence. We disagree.

{¶ 10} Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated an abused, neglected, or dependent child, the juvenile court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" Unlike permanent custody, legal custody merely vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact. *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. Therefore, unlike permanent custody, granting legal custody does not terminate the parent-child relationship. *Id.*

{¶ 11} A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the juvenile

- 4 -

court to consider all relevant factors, including, but not limited to, any applicable factors provided in R.C. 3109.04(F). *In re L.T.*, 12th Dist. Butler Nos. CA2016-03-048 and CA2016-03-058, 2016-Ohio-5272, ¶ 60. These factors include, but are not limited to: (1) the wishes of the child's parents regarding the child's care; (2) the wishes and concerns of the child, as expressed to the juvenile court; (3) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to the child's home, school, and community; and, (5) the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(a) thru (e).

{¶ 12} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. As a result, the standard of review in custody decisions is whether the juvenile court abused its discretion. *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re C.A.*, 2015-Ohio-1410 at ¶ 15. A reviewing court must not substitute its judgment for that of the juvenile court when applying the abuse of discretion standard. *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 26.

{¶ 13} As it relates to a manifest weight of the evidence challenge, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially

mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. In turn, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21. Thus, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *In re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 28, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶ 14} After reviewing the record, including the lengthy transcripts from the five-day dispositional hearing, we find the juvenile court did not abuse its discretion by granting legal custody of the children to the Grays, the Blacks, and the Whites.

### A.B. to the Grays

{¶ 15} As it relates to A.B., who was 11 months old at the time BCDJFS filed its complaint, the record indicates A.B. was so dirty while living in the one-bedroom apartment with Mother and Father that she developed a yeast infection under her chin. There was also testimony that A.B. was developmentally delayed and had a flat head as a result of her spending most of her time laying on a mattress in front of the television. The record further indicates that A.B. was "severely compacted," had an ear infection, and was very dirty with matted hair at the time of her removal. However, since being placed with the Grays, the record indicates A.B. has received the necessary medical attention for her constipation, is no longer developmentally delayed, and is now on track for her age.

{¶ 16} There was also testimony that A.B. is clean, bathed, and well cared for by the Grays. The record further establishes that A.B. has a strong bond with the Grays, as well as the Grays' 12-year-old son who "adores" her. As Mrs. Gray even testified when asked of her

attitude in making A.B.'s placement in her home permanent, Mrs. Gray testified that "when she came into our house she became ours." The guardian ad litem also testified that A.B. appeared healthy and happy with the Grays who are "extremely devoted to her."

### J.B. to the Blacks

{¶ 17} In regards to J.B., who at the time the complaint was filed by BCDJFS was six years old, the record indicates that, upon her removal, J.B. was "disheveled," dirty, with ratty hair, exhibited an offensive smell, and appeared very thin. However, since being placed with the Blacks, J.B. received counseling, was cleaner and heathier, and had been prescribed medication for her "extreme" case of ADHD. The record also indicates J.B. has been diagnosed with an anxiety disorder that, according to Mrs. Black, approached a potential heightened diagnosis of PTSD. There was also testimony that J.B. would become very angry and engage in self harm after attending supervised visits with Mother and Father. This includes testimony that J.B. would hit herself in the head, pull her hair, and "pick her fingers sometimes until they bled at times."

{¶ 18} Nevertheless, although substantially behind academically and socially to other children her age, the record indicates that J.B., who also receives services for a speech and language disorder, has made tremendous progress both academically and socially since being placed with the Blacks. As one of her counselors even testified, J.B. is "blossoming." The record further establishes that J.B. has a strong bond to the Blacks, as well as the Blacks' other children who J.B. oftentimes calls her brothers and sisters. Mrs. Black further indicated that she hoped to keep J.B. at her home, if possible. The guardian ad litem also testified that J.B. told him she did not want to return home with Mother and Father.

### L.B. and S.B. to the Whites

{¶ 19} Finally, as it relates to L.B. and S.B., who were approaching three and four years old at the time BCDJFS filed its complaint, the record indicates the two children were

now attending daycare and preschool, as well as other outside activities, and that their speech development had increased dramatically since being placed with the Whites. Specifically, in regards to L.B., a caseworker from BCDJFS testified that "you couldn't understand [L.B.]" upon her removal, but now that she has been attending daycare and preschool, she has developed better speech and communication. The record further indicates that both children have bonded well with the Whites, who indicated they were "willing to provide foreseeable care for the children." The guardian ad litem also testified that L.B. and S.B. "were literally as happy as can be to be there," that they were "very comfortable, very happy," and that L.B. and S.B. repeatedly stated that they did not want to leave and return home with Mother and Father.

{¶ 20} In light of the foregoing, while it is clear that Mother has a strong, loving relationship with her children, we find the evidence presented to the juvenile court establishes by a preponderance of the evidence that granting legal custody of the children to their respective foster parents, the Grays, the Blacks, and the Whites, was in the children's best interest. As the guardian ad litem even testified, "no matter how strong [the bond] would not change my opinion that these children are improperly cared for." This is true despite the fact that Mother completed some of her case plan services, particularly that of her parenting classes, for "it is well-settled that the completion of case plan services alone does not equate to, or necessitate a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home." *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30. The case plan is a means to the goal of reunification, but not the goal itself. *In re G.C.*, 12th Dist. Butler Nos. CA2016-12-237 thru CA2016-12-240, 2017-Ohio-4226, ¶ 42.

{¶ 21} In reaching this decision, we further note that the issues resulting in the removal of the children at issue was not simply "the situation of alleged filth" as Mother suggests.

Rather, as it relates to the children at issue in this case, the testimony presented to the juvenile court revealed significant, ongoing concerns regarding the children's hygiene, academic and social development, and safety while living in Mother's dirty, cluttered one-bedroom apartment with their four other siblings, Mother, Father, and Wife. This includes testimony that Wife at one time had thoughts of killing herself and her children, and that Father had twice been convicted of endangering children. These issues cannot be ignored simply because Mother was employed and had not involved herself in illicit drugs or other criminal activity.

{¶ 22} Moreover, contrary to Mother's claim otherwise, the record fully supports the magistrate's decision finding "the condition of the residence was intolerable for the well-being of the children" and that they "did not alleviate the harmful condition of the children," despite repeated help from BCDJFS. This is true regardless of whether the one-bedroom apartment where Mother, at least at one point, lived with Father and Wife had been considered "clean." As the guardian ad litem testified, Mother, Father, and Wife do not possess "the adult capacity, guidance, responsibility, wherewithal, or good sense of judgment to raise these children." We agree. Therefore, having found no abuse of discretion in the juvenile court's decision granting legal custody of the children to the Grays, the Blacks, and the Whites, and concluding the juvenile court's decision was not against the manifest weight of the evidence, Mother's first assignment of error is without merit and overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT COMMITTED PLAIN ERROR IN GRANTING LEGAL CUSTODY OF S.B. AND L.B. TO [THE WHITES], WHEN THEY NEVER APPEARED BEFORE THE COURT PURSUANT TO R.C. 2151.353(A)(3)(d).

{¶ 25} In her second assignment of error, Mother argues the juvenile court erred by granting legal custody of S.B. and L.B. to the Whites when it is undisputed the Whites did not

testify at any portion of the five-day dispositional hearing. Mother, however, never raised any objection to the Whites' absence from the dispositional hearing, thereby forfeiting all but plain error on appeal.

{¶ 26} The plain error doctrine is not favored in civil cases. *In re K.R.*, 12th Dist. Clermont No. CA2015-06-049, 2016-Ohio-2775, ¶ 20. The Ohio Supreme Court defined plain error in the civil context as an error that "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. Plain error will be recognized only in the extremely rare case involving exceptional circumstances. *In re E.J.*, 12th Dist. Warren No. CA2014-07-098, 2015-Ohio-731, ¶ 10.

{¶ 27} Pursuant to R.C. 2151.353(A)(3)(d),

> A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:
>
> * * *
>
> (d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

"[T]he legislative purpose of the signed statement of understanding under R.C. 2151.353(A) is to help insure that prospective legal custodians are apprised of the significant responsibilities they will undertake." *In re W.A.*, 5th Dist. Muskingum No. CT2013-0002, 2013-Ohio-3444, ¶ 16.

{¶ 28} Mother has not directed this court to anything in the record to suggest the Whites were unaware of the significant responsibilities involved in obtaining legal custody of

S.B. and L.B. Rather, the record indicates the Whites were well-aware of such responsibilities considering they both signed a statement of understanding detailing those responsibilities before BCDJFS filed its motion requesting the Whites be granted legal custody. The Whites' home study also indicates the Whites advised BCDJFS they were willing to care for S.B. and L.B. "for as long as necessary" and that they were "happy to be able to provide a safe and stable environment for the children." The guardian ad litem further recommended the Whites be awarded legal custody of S.B. and L.B. In light of our holding above, this is not one of the extremely rare cases involving exceptional circumstances that requires a finding of plain error. *In re Bouska*, 5th Dist. Tuscarawas No. 2007 AP 09 0063, 2008-Ohio-3277, ¶ 34. Accordingly, because we see no reason why S.B. and L.B.'s placement with the Whites should not continue, Mother's second assignment of error is without merit and overruled.

{¶ 29} Assignment of Error No. 3:

{¶ 30} THE TRIAL COURT COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION IN SETTING THE DISPOSITION FOR FIVE SEPARATE DATES THAT SPANNED ALMOST A YEAR, AND IN NOT RULING ON OBJECTIONS TO THE MAGISTRATE'S DECISION FOR AN ADDITIONAL YEAR AND A HALF.

{¶ 31} In her third assignment of error, Mother argues the juvenile court committed plain error and abused its discretion by setting the disposition hearing for five separate dates and by failing to rule on her objections to the magistrate's decision until over a year after they were filed. Mother, however, has failed to provide any evidence as to how these delays may have impacted the juvenile court's ultimate decision finding it was in the children's best interest to award legal custody to the Grays, the Blacks, and the Whites. While it certainly would have been better practice for the juvenile court to resolve these matters more expeditiously given the uncertain nature of legal custody proceedings, this case involved

- 11 -

eight children of various ages, multiple attorneys representing the Mother, Father, and Wife, as well as the guardian ad litem and a psychologist, all of whom had conflicting, busy schedules. This court will not usurp the power of the juvenile court to control its own docket. Once again, this is not one of the extremely rare cases involving exceptional circumstances that requires a finding of plain error. Therefore, Mother's third assignment of error is without merit and overruled.

{¶ 32} Assignment of Error No. 4:

{¶ 33} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT SETTING THE CASES FOR REVIEW AFTER APPELLANT FILED OBJECTIONS TO THE MAGISTRATE'S DECISION.

{¶ 34} In her fourth assignment of error, Mother argues the juvenile court committed plain error and abused its discretion by not holding an annual review hearing while her objections to the magistrate's decision were pending. In support of this claim, Mother cites to R.C. 2151.417(C), a statute that requires the juvenile court to hold a "review hearing no later than every twelve months after the initial review hearing until the child is adopted, returned to the parents, or the court otherwise terminates the child's placement or custody arrangement[.]" However, as Mother readily admits, Mother never requested the juvenile court to hold such a hearing, thereby forfeiting all but plain error on appeal. Again, this is not one of the extremely rare cases involving exceptional circumstances that requires a finding of plain error. This is certainly true here considering any reversal at this stage would do nothing more than further delay these already lengthy legal custody proceedings. Certainly, if there is reason to terminate the children's placement or custody arrangement, the juvenile court retains jurisdiction to address those issues. Therefore, because this failure does not raise to the level of plain error, Mother's fourth assignment of error is without merit and overruled.

{¶ 35} Assignment of Error No. 5:

{¶ 36} THE TRIAL COURT ERRED BY NOT HOLDING THE AGENCY TO ITS BURDEN OF PROOF AND BY NOT MAKING A FINDING THAT THE AGENCY HAD MET ITS REASONABLE EFFORTS REQUIREMENTS AND COMPLIED WITH R.C. 2151.419(A).

{¶ 37} In her fifth assignment of error, Mother argues the juvenile court failed to find BCDJFS made reasonable efforts to either "prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home" as required by R.C. 2151.419(A). That is simply not the case for the juvenile court specifically stated that Mother's "argument that [BCDFJS] failed to prove they made reasonable efforts is not well taken" given the fact that she was "offered services and participated in services." As noted above, the record fully supports the juvenile court's decision. Mother's fifth assignment of error is therefore without merit and overruled.

{¶ 38} Assignment of Error No. 6:

{¶ 39} THE TRIAL COURT ERRED BY AN AWARD OF LEGAL CUSTODY TO KINSHIP PLACEMENTS WHO WERE NOT "RELATIVES AND FRIENDS OF THE FAMILY" AS THE COURT INCORRECTLY FOUND, BUT WERE SIMPLY FAMILIES FROM THE CHILDREN'S SCHOOL DISTRICT.

{¶ 40} In her sixth assignment of error, Mother once again argues the juvenile court erred by awarding legal custody of the children to the Grays, the Blacks, and the Whites, three nonrelative families. In support of this claim, Mother takes issue with the juvenile court's erroneous classification of the Grays, the Blacks, and the Whites as "relatives and friends of the family."[3] However, despite this faulty characterization, pursuant to R.C. 2151.353(A)(3), the juvenile court may award legal custody to "either parent or to any other

---

3. The record indicates that although the Grays, the Blacks, and Whites may not have been "relatives and friends of the family," they "had known the family and been involved with the family."

person," including, as it relates to this case, the Grays, the Blacks, and the Whites. As stated previously, a juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 2015-Ohio-1410, ¶13. That is exactly what occurred here. The fact that the juvenile court incorrectly referred to the Grays, the Blacks, and the Whites as "relatives and friends of the family," as opposed to "people who have frequent contact with the children" as one caseworker testified, does not impact that determination.

{¶ 41} In so holding, we find it necessary to dispel Mother's apparent misconception regarding the juvenile court's decision to grant legal custody of the children to the Grays, the Blacks, and the Whites. Again, this is a case of legal custody, not permanent custody. In turn, just as the juvenile court stated, Mother's "parental rights" in regards to the children at issue "**have not** been terminated." (Emphasis sic.) This means that Mother still has the right to visit the children, the right to make elective medical decisions for the children, and the right to choose the children's religious affiliation. The juvenile court noted as much as part of its decision overruling Mother's objections to the magistrate's decision. Therefore, Mother's claim that the Grays, the Blacks, and the Whites would have no ongoing relationship with her in regards to these children is simply incorrect. Accordingly, Mother's sixth assignment of error is without merit and overruled.

{¶ 42} Assignment of Error No. 7:

{¶ 43} THE TRIAL COURT ERRED BY SETTING FORTH NOT A SINGLE FACT AND IN MAKING NO DIFFERENTIATION BETWEEN THE THREE PARENTS BEFORE IT WHEN ISSUING ITS DECISION FOLLOWING A REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW.

{¶ 44} In her seventh assignment of error, Mother argues the juvenile court erred by failing to provide its own findings of fact and conclusions of law when ruling on her objections

to the magistrate's decision. In support of this claim, Mother notes the caption on her objections to the magistrate's decision included a specific request for "specific findings of fact and conclusions of law[.]" However, by upholding the magistrate's decision, the juvenile court clearly approved and adopted the magistrate's findings of fact and conclusions of law as its own. The juvenile court need not repeat those same findings of fact and conclusions of law within its own decision. Moreover, the fact that the juvenile court referred to Mother, Father, and Wife collectively as "parents" instead of discussing each individual separately within its entry does not render the juvenile court's decision improper. As noted above, the juvenile court's decision granting legal custody of the children to the Grays, the Blacks, and the Whites, three nonrelative families, was in the children's best interest and not an abuse of discretion. Therefore, Mother's seventh assignment of error is without merit and overruled.

{¶ 45} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.