[Cite as *In re J.W.*, 2020-Ohio-322.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| J.W. | : | CASE NO. CA2019-07-108 |
| | : | O P I N I O N<br>2/3/2020 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2018-0339

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Dawn S. Garrett, 9435 Waterstone Boulevard, Suite 140, Cincinnati, Ohio 45249, for appellant

Jamie Landvatter, 10 Journal Square, Suite 300, Hamilton Ohio 45011, guardian ad litem for child

Jeannine Barbeau, P.O. Box 42324, Cincinnati, Ohio 45242, guardian ad litem for appellant

**S. POWELL, J.**

{¶ 1}   Appellant, the mother of J.W. ("Mother"), appeals the decision of the Butler

County Court of Common Pleas, Juvenile Division, granting legal custody of J.W. to K.D.,

a nonrelative. For the reasons outlined below, we affirm the juvenile court's decision.

{¶ 2}   On April 27, 2018, J.W. was removed from Mother's care by appellee, Butler County Children Services ("BCCS"). The removal occurred after the police were dispatched to K.D's home in reference to a disturbance.[1] Upon their arrival, the police learned that J.W. had been residing with K.D. for several months with Mother's approval, but that Mother now wanted J.W. to be returned back home to her. J.W., however, advised the police that she did not want to return home to Mother due to the unlivable and unsafe condition of Mother's home. This included animal feces and trash strewn throughout Mother's home, as well as a toilet laying in the middle of J.W.'s bedroom. The unlivable and unsafe conditions of Mother's home were thereafter confirmed by police, thus prompting J.W.'s removal from Mother's care.

{¶ 3}   On April 30, 2018, BCCS established a safety plan that placed J.W. in K.D.'s home, which BCCS found to be clean and uncluttered with plenty of food for J.W. and a bed for J.W. to sleep. The safety plan was established by BCCS due to the condition of Mother's home discussed above, as well as allegations that J.W. had suffered physical harm while in Mother's care. This was in addition to BCCS' ongoing concerns regarding Mother's mental health. These concerns manifested themselves in Mother's erratic and animated behavior while meeting with BCCS shortly after J.W.'s removal from her care. Specifically, as BCCS later stated in a social summary submitted to the juvenile court:

> On 4/30/18, [BCCS] met with [Mother] at her residence * * *.
> [Mother's] behavior was erratic and animated throughout this
> entire home visit. She was pacing around and speaking very
> loudly. At one point, she got down on her knees and prayed to
> Jesus. She stated that [K.D.] was her fiancé. She stated she
> gave her a ring and they were together. She denied ever living
> with [K.D.]

---

1. The record indicates that BCCS had a history with Mother dating back to late 2004 that resulted in J.W being placed in foster care due to Mother's neglect. BCCS had additional contact with Mother in 2009 and 2014 after it was alleged J.W. was being sexually abused while in Mother's care.

{¶ 4} On September 28, 2018, Mother was arrested and charged with conspiring to have K.D. murdered. As alleged in the indictment, the charges arose after Mother solicited a person to commission a "hitman" to kill K.D. Four days later, on October 2, 2018, BCCS filed a complaint with the juvenile court alleging J.W. was a dependent child. Later that day, the juvenile court issued an emergency ex parte order placing J.W. in the temporary custody of K.D. The juvenile court also ordered protective supervision of J.W. to BCCS and appointed J.W. a guardian ad litem. The following day, October 3, 2018, a shelter care hearing was held before a juvenile court magistrate. At the conclusion of this hearing, the magistrate continued all prior orders and scheduled the matter for a pretrial hearing.

{¶ 5} On April 30, 2019, the magistrate held an adjudication hearing and adjudicated J.W. a dependent child. During this hearing, the magistrate noted that Mother had been involuntarily hospitalized as a result of her being found incompetent to stand trial for conspiring to have K.D. murdered. After adjudicating J.W. a dependent child, the magistrate then scheduled the matter for a dispositional hearing on May 22, 2019 with a "fallback" date of June 11, 2019. The magistrate explained that this "fallback" date was being placed on the docket "just in case" the dispositional hearing scheduled for May 22, 2019 could not proceed as scheduled due to a "bunch of emergency orders that come in."

{¶ 6} On May 22, 2019, the magistrate conducted the originally scheduled dispositional hearing. During this hearing, Mother's trial counsel moved the magistrate to continue the hearing to the "fallback" date so that Mother could attend the dispositional hearing in person.[2] Mother's trial counsel also moved the magistrate to continue the dispositional hearing based on a letter counsel had received from Mother the previous day,

2. The record indicates that Mother did not attend the dispositional hearing due to her still being involuntarily hospitalized.

May 21, 2019. In this letter, Mother asked her trial counsel to contact a witness who Mother believed would testify to having previously purchased drugs from K.D. Mother also alleged that this witness, who Mother claimed was then serving time in the Butler County Jail, would testify that K.D. had earlier provoked some unidentified man into committing suicide.

{¶ 7} When asked about Mother's allegations contained in this letter, Mother's trial counsel had the following exchange with the magistrate:

> [MOTHER'S TRIAL COUNSEL]: I think the allegation is that this [witness] has bought drugs from the current custodian.
>
> [MAGISTRATE]: Ah. And [Mother's] of the opinion that [the witness] would come to court and then swear under oath that she had been buying drugs from somebody.
>
> [MOTHER'S TRIAL COUNSEL]: That would be my understanding.
>
> [MAGISTRATE]: Okay. But you don't know where [the witness] is?
>
> [MOTHER'S TRIAL COUNSEL]: I checked in the jail based on that letter. Apparently [the witness is] not in the Butler County Jail, so I don't know where, where she would be.

{¶ 8} Following this exchange, the magistrate heard arguments from BCCS and J.W.'s guardian ad litem. Both BCCS and J.W.'s guardian ad litem agreed that it would be in J.W.'s best interest to deny Mother's motion for a continuance and grant legal custody to K.D. without any further delay. Specifically, as J.W.'s guardian ad litem stated:

> I just really believe that it is in [J.W.'s] best interest to go ahead and grant legal custody today. She wants to get out of Middletown. She had to stop attending school, regular school in Middletown and start doing online school, because she's embarrassed because the kids in school all know what happened with her family and she's… she was mortified and had to stop attending regular school, and I think that it would be in her best interest to be able to move to a different area with [K.D.]

{¶ 9} The magistrate agreed. In reaching this decision, the magistrate stated:

Okay. What I'm going to do, I'm going to deny the request to delay this any further. I don't think there's any purpose in it. We wouldn't transport mother from [the institution where she is involuntarily hospitalized], and she's presented the Court with her letter. Don't have any reason to believe that this person would be locatable, or even if they would that it would be likely they'd testify consistent with what mother is saying and come in and incriminate themselves, which is essentially what they would be doing.

{¶ 10} On June 4, 2019, Mother filed an objection to the magistrate's decision. In support of her objection, Mother argued that the magistrate erred by finding it was in J.W.'s best interest to grant legal custody of J.W. to K.D. Mother also argued that the magistrate erred by denying her motion to continue the dispositional hearing until the "fallback" date, June 11, 2019. Mother further moved the juvenile court for a transcript of the dispositional hearing and requested the juvenile court hold a hearing on the matter.

{¶ 11} On June 6, 2019, the juvenile court issued a decision overruling Mother's objection to the magistrate's decision in its entirety. The juvenile court issued this decision without holding a hearing on Mother's objection as Mother requested. The juvenile court also denied Mother's motion for a transcript of the dispositional hearing. In so holding, the juvenile court specifically stated that it had conducted a "review of the record" prior to finding Mother's objection to be "not well taken." Mother now appeals the juvenile court's decision, raising three assignments of error for review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE DENIAL OF A CONTINUANCE WAS AN ABUSE OF DISCRETION.

{¶ 14} In her first assignment of error, Mother argues the juvenile court erred and abused its discretion by denying her motion to continue the dispositional hearing since there was "already another hearing date set." However, contrary to Mother's claims, the juvenile court had not already scheduled the dispositional hearing for another date. The juvenile court had instead reserved a "fallback" date on its docket "just in case" the disposition

hearing could not proceed as originally scheduled due to a "bunch of emergency orders that come in." After hearing arguments from BCCS and J.W.'s guardian ad litem, the juvenile court denied Mother's motion upon finding there was no reason to delay the matter any further. As noted by the juvenile court, this was because "[w]e wouldn't transport mother from [the institution where she is involuntarily hospitalized], and she's presented the Court with her letter." We find no abuse of discretion in the juvenile court's decision. Therefore, finding no error in the juvenile court's decision, Mother's first assignment of error lacks merit and is overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE DENIAL OF A TRANSCRIPT OR HEARING AND OVERRULING MOTHER'S OBJECTIONS CONSTITUTES BOTH AN ERROR AND AN ABUSE OF DISCRETION.

{¶ 17} In her second assignment of error, Mother argues the juvenile erred by failing to conduct a full review of the record prior to issuing its decision overruling her objection to the magistrate's decision. Mother supports this claim by arguing that since the juvenile court denied her motion for a transcript of the dispositional hearing that it was impossible for the juvenile court to conduct a full review of the record. However, simply because the juvenile court denied Mother's motion for a transcript in no way indicates the juvenile court did not conduct a full and thorough review of that hearing via some other means. Juv.R. 40(C)(7) requires "all proceedings before a magistrate shall be recorded in accordance with procedures established by the court." This would include the dispositional hearing Mother claims the juvenile court failed to review. Therefore, because there is nothing in the record to indicate the juvenile court did not conduct a full review of the record prior to issuing its decision, Mother's argument claiming the juvenile court failed to conduct such a review lacks merit.

{¶ 18} Also lacking merit is Mother's argument claiming the juvenile court erred by failing to conduct a hearing prior to issuing its decision overruling her objection to the magistrate's decision. It is well established that a juvenile court is generally not required to hold a hearing prior to ruling on a party's objections to a magistrate's decision. *In re T.L.C.*, 12th Dist. Butler No. CA2014-01-008, 2014-Ohio-3995, ¶ 31, citing Juv.R. 40(D)(4)(d). The only time a juvenile court is required to hold a hearing and hear additional evidence is where the "objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." Juv.R. 40(D)(4)(d). The fact that Mother believes there are "serious concerns" regarding K.D.'s fitness to serve as J.W.'s legal custodian falls well short of what is needed to force the juvenile court to hold a hearing. Therefore, finding no merit to either of Mother's arguments raised herein, Mother's second assignment of error is overruled.

{¶ 19} Assignment of Error No. 3:

{¶ 20} THE GRANTING OF LEGAL CUSTODY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 21} In her third assignment of error, Mother argues the juvenile court's decision granting legal custody of J.W. to K.D. was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

{¶ 22} A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13. Similarly, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *In re T.M.*, 12th Dist. Butler No.

CA2007-01-019, 2007-Ohio-6034, ¶ 28, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "'[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *In re A.B.*, 12th Dist. Brown No. CA2016-11-021, 2017-Ohio-5776, ¶ 13, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶ 23} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. The standard of review in custody decisions is whether the juvenile court abused its discretion. *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "The discretion that a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re A.B.*, 2017-Ohio-5776 at ¶ 12, citing *In re C.A.*, 2015-Ohio-1410 at ¶ 15. A reviewing court must not substitute its judgment for that of the juvenile court when applying the abuse of discretion standard. *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 26.

{¶ 24} Mother claims the trial court erred by granting legal custody of J.W. to K.D. due to there being "serious concerns" regarding J.W.'s schooling and mental health treatment while in K.D.'s care. This is in addition to Mother's "serious concerns" that "a witness had purchased drugs" from K.D. and K.D. having "driven a man to commit suicide."

But, as the record indicates, the juvenile court took all of this into consideration when issuing its decision finding it was in J.W.'s best interest to grant legal custody of J.W. to K.D. A review of the record, including the transcript of the disposition hearing prepared and filed with the juvenile court for purposes of this appeal, fully supports the juvenile court's decision. J.W.'s best interest is the paramount concern for both the juvenile court and this court on appeal. Considering J.W. reports being happy and comfortable in her placement with K.D., the juvenile court's decision granting legal custody of J.W. to K.D. serves J.W.'s best interests. Therefore, because the juvenile court's decision granting legal custody of J.W. to K.D. was supported by sufficient evidence and not against the manifest weight of the evidence, Mother's third assignment of error lacks merit and is overruled.

{¶ 25} Judgment affirmed.

M. POWELL, P.J., and RINGLAND, J., concur.