[Cite as *In re M.K.*, 2024-Ohio-5541.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: M.K.

C.A. No.     24CA0009-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2021 08 DE 0042

DECISION AND JOURNAL ENTRY

Dated: November 25, 2024

CARR, Judge.

{¶1}     Appellant, J.K. ("Mother"), appeals from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the child's paternal grandparents ("Grandparents").  This Court reverses and remands.

I.

{¶2}     The record in this case fails to detail many of the facts relevant to this appeal. Mother is the biological mother of the child at issue in this appeal, M.K., born February 9, 2018. The child's father ("Father") agreed to M.K. being placed in the legal custody of Grandparents and did not appeal from that judgment.

{¶3}     Mother and Father are married but have been in an on and off romantic relationship since 2008, when Mother was 15 years old.  Mother gave birth to the couple's first child in 2009 and their second child in 2013.  It is unclear when their substance abuse problems arose, but both parents later admitted that they were addicted to drugs and were unable to provide their children

with appropriate care. During 2015, through a voluntary agreement, the parents placed those two children in the legal custody of Grandparents. Few details about those custodial circumstances are set forth in the record, except that those children have continued to reside in Grandparents' legal custody.

{¶4} By the time M.K. was born, in addition to substance abuse problems, the parents' relationship also suffered from Father perpetrating domestic violence against Mother. After M.K. was born, the child resided with Mother, but it is unclear whether Father was then living in the home. At some point, Mother obtained a protection order and Father moved out of the house. Prior to this case, Father was also incarcerated for periods of time on unspecified crimes, including that he violated the protection order by continuing to have contact with Mother.

{¶5} On August 11, 2021, Medina County Job and Family Services ("MCJFS") filed a complaint to allege that M.K. was a dependent child for numerous reasons, including ongoing substance abuse by both parents and domestic violence by Father against Mother. The trial court later adjudicated M.K. as a dependent child, placed her in the temporary custody of MCJFS, and adopted the case plan as an order of the court. The agency placed M.K. in the home of Grandparents with her two older siblings.

{¶6} When this case began, Mother was also 20 weeks pregnant with another child. That child, Z.A., was born on October 8, 2021. The juvenile court removed Z.A. from Mother's custody shortly after birth, adjudicated him dependent, and placed him in the temporary custody of MCJFS. Z.A. is not Father's child but is the son of a man with whom Mother had an extramarital affair while Father was incarcerated. Mother believed that Father and Grandparents were angry with her about the affair and the birth of Z.A. Grandparents were not willing to have Z.A. placed in their home as a kinship placement, so that child was placed in the home of a foster family. As will be

explained later, because Grandparents did not testify at the final hearing and minimal evidence was offered about them, the impact of Z.A.'s birth on the relationship between Mother and Grandparents is not developed in the record.

{¶7} The case plan in this case required Mother to resolve her substance abuse problems, engage in ongoing counseling to address her problems with instability and as a victim of domestic violence, and demonstrate an ability to meet the basic needs of herself and M.K. Mother actively engaged in case planning services throughout this case. Because Mother was making progress on the reunification goals of the case plan, the trial court twice extended temporary custody.

{¶8} Father, however, did not cooperate with MCJFS and made minimal progress on the reunification goals of the case plan. MCJFS remained concerned about his unstable mental health and his history of perpetrating domestic violence against Mother and displaying threatening behavior toward others involved in this case. For that reason, Father was not permitted to have contact with M.K. without supervision by an appropriate adult. Grandparents were permitted to supervise visits between Father and M.K. but Mother was not.

{¶9} Mother was briefly permitted to have unsupervised visits with M.K. at a public library but, after MCJFS learned that Father appeared at a visit, the agency again required that Mother's visits with the child be supervised. The agency believed that Mother and Father continued to have regular contact, and it questioned Mother's ability to stand up to Father to protect her children from him.

{¶10} On July 11, 2023, MCJFS moved for permanent custody of M.K. and Z.A. At that time, MCJFS did not believe that reunification with Mother was possible, and Grandparents had informed the agency that they were not willing to take legal custody of M.K. Mother alternatively

moved for both children to be returned to her legal custody. The matter was scheduled for a dispositional hearing to be held on November 20 and 21, 2023.

{¶11} On November 13, 2023, seven days before the date set for the final dispositional hearing, MCJFS filed a motion to modify its pending motion as to M.K. but did not modify its prior permanent custody motion as it pertained to Z.A. Specifically, MCJFS requested that M.K. be placed in the legal custody of Grandparents, rather than in the permanent custody of the agency. MCJFS did not explain in its motion, or at the subsequent hearing, why Grandparents had changed their prior decision about assuming legal custody of M.K.

{¶12} The same day, MCJFS also filed a joint "Affidavit for Statement of Understanding for Legal Custody[]" with notarized signatures of each Grandparent. Included within the signed document were paraphrased versions of the statements required by R.C. 2151.353(A)(3)(a)-(d), including that "I understand that I must be in court for the hearing in order to affirm my intention to become legal custodian, to affirm that I understand the effect of the custodianship before the Court, and to answer any questions the court or any parties to the case may have." *See* R.C. 2151.353(A)(3)(d).

{¶13} The matter proceeded to a dispositional hearing before a visiting judge on the motions of MCJFS to place M.K. in the legal custody of Grandparents and Z.A. in the agency's permanent custody; and on Mother's alternative motion to return both children to her legal custody. None of the parties raised a timely objection to the agency's late request to change its final dispositional motion pertaining to M.K. In fact, Father testified briefly and then stipulated that he supported the agency's request for the trial court to place M.K. in the legal custody of Grandparents.

{¶14} In prosecuting its motion for legal custody to Grandparents, however, MCJFS presented evidence about the case plan compliance of each parent and whether M.K. should be returned to Mother's custody. Significantly, Grandparents did not appear or testify at the hearing and MCJFS offered very little evidence about whether permanent placement with Grandparents was in M.K.'s best interest.

{¶15} Following the hearing, the trial court explicitly noted that "[s]hockingly and unexplainably," MCJFS had failed to call Grandparents to testify. Nevertheless, the trial court found that legal custody of M.K. to Grandparents was in the child's best interest but that permanent custody of Z.A. to MCJFS was not. Consequently, it granted the motion to place M.K. in the legal custody of Grandparents but denied the permanent custody motion pertaining to Z.A. Mother appeals from the legal custody judgment and raises five assignments of error. This Court will consolidate some of the assigned errors because they are interrelated.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN GRANTING LEGAL CUSTODY OF M.K. TO PATERNAL GRANDPARENTS UPON MOTION OF [MCJFS], FILED SEVEN DAYS PRIOR TO THE FINAL DISPOSITION[AL] HEARING, WHERE PATERNAL GRANDPARENTS DID NOT APPEAR OR TESTIFY AT THE FINAL HEARING.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT'S JANUARY 3, 202[4] FINDINGS AND CONCLUSIONS IN GRANTING LEGAL CUSTODY OF M.K. TO PATERNAL GRANDPARENTS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND CONTRARY TO THE TRIAL COURT'S FINDINGS AND CONCLUSIONS WITH REGARD TO Z.A.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED IN FINDING A PREPONDERANCE OF THE EVIDENCE DEMONSTRATES THE GRANTING OF LEGAL CUSTODY TO PATERNAL GRANDPARENTS IS IN M.K.'S BEST INTEREST.

{¶16} Through her first, third, and fifth assignments of error, Mother challenges the merits of the trial court's legal custody judgment on multiple grounds, which include: (1) the trial court's compliance with the requirements of R.C. 2151.353(A)(3), and (2) whether the trial court's factual findings and its ultimate decision were supported by the evidence in the record. This Court will briefly address the statutory issue but will concentrate its review on Mother's fifth assignment of error that the trial court's judgment was not supported by sufficient evidence, as that issue is dispositive.

**Compliance with R.C. 2151.353(A)(3)**

{¶17} Since September 21, 2006, when a party files a motion for legal custody of a child to a non-party (such as Grandparents), R.C. 2151.353(A)(3) has required that the trial court is authorized to award legal custody to that person "only if the person identified *signs* a statement of understanding for legal custody[.]" (Emphasis added.) The signed statement of understanding is required to include specific statements to indicate that the proposed custodian: intends to become the legal custodian and can assume those responsibilities; understands that the placement is intended to be permanent; understands that the parents retain residual parental rights; and, of relevance here, subsection (d) provides that the proposed custodian understands that he or she:

> *must be present in court for the dispositional hearing* in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

(Emphasis added). R.C. 2151.353(A)(3)(a)-(d).

{¶18} The record reveals that Grandparents executed and signed a joint statement of understanding, which was filed in the record the same day that MCJFS filed its motion for legal custody to Grandparents. Although Mother suggests that MCJFS was required to present Grandparents' statement of understanding into evidence at the hearing, she points to no legal authority to support that argument. The statement was filed in the record prior to the hearing, which is typically understood to satisfy the requirement of R.C. 2151.353(A)(3). *See e.g.*, *In re K.A.*, 2017-Ohio-1, ¶ 32 (9th Dist.). Mother does not allege that there is any deficiency in the written statement of understanding that Grandparents signed.

{¶19} Instead, Mother points to the language of R.C. 2151.353(A)(3)(d) that sets forth the required contents of the statement of understanding. As quoted above, pursuant to R.C. 2151.353(A)(3)(d), Grandparents' statement of understanding included their stated understanding that they must be present in court for the final dispositional hearing to state their intentions and understanding about the legal custody motions, and to be subject to questioning by the parties. Implicit in that stated "understanding" is the requirement that Grandparents appear at the hearing and so testify.

{¶20} There is no dispute in this case that Grandparents did not appear or testify at the final hearing. Although MCJFS asserts on appeal that Mother subpoenaed Grandfather and later excused him from the courtroom, that assertion is not supported by the record. Further, it was the burden of MCJFS, not Mother, to support its motion for legal custody to Grandparents under R.C. 2151.353(A)(3).

{¶21} The record reveals that Mother did not raise this challenge during the hearing but raised it for the first time in her written closing argument that her counsel filed after the hearing had concluded. Therefore, MCJFS argues that Mother's challenge was not timely, and she

forfeited all but plain error. At least three appellate districts have held that the failure of the proposed custodians to appear and testify at the final dispositional hearing did not constitute plain error where the record demonstrated that they had signed a statement of understanding, and other evidence admitted at the hearing supported the trial court's legal custody decision. *See In re K.F.*, 2023-Ohio-1438, ¶ 13 (3d Dist.); *In re A.B.*, 2017-Ohio-5776, ¶ 28 (12th Dist.); *In re Bouska*, 2008-Ohio-3277, ¶ 35-36 (5th Dist.).

{¶22} This Court need not determine whether the Grandparents' failure to attend and testify at the hearing, in and of itself, constituted reversible error. This Court will instead focus its review on the broader issue set forth in Mother's fifth assignment of error: whether MCJFS met its evidentiary burden to support its legal custody motion. As will be explained below, the failure of MCJFS to present the testimony of Grandparents, coupled with the "paucity of evidence actually presented" by MCJFS about the placement of M.K. in Grandparents' home, supports Mother's alternative argument that the trial court lacked sufficient evidence to conclude that legal custody to Grandparents was in the best interest of M.K. *See In re A.W.*, 2010-Ohio-817, ¶ 12 (9th Dist.).

### Evidence Supporting Legal Custody to Grandparents

{¶23} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 2016-Ohio-1330, ¶ 12 (9th Dist.). No specific test or set of criteria is set forth by statute regarding an award of legal custody, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.).

{¶24} An award of legal custody must be supported by a preponderance of the evidence. *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.). "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *Id.* As MCJFS filed the motion for legal custody of M.K. to Grandparents, it maintained the burden to prove, by a preponderance of the evidence, that such a permanent placement was in the best interest of M.K. *See In re A.W.* at ¶ 12 (9th Dist.).

{¶25} The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.). Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence, and whether any of the factors of R.C. 2151.414(E)(7)-(11) apply to this case. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.). None of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to the facts of this case. The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 2017-Ohio-1, at ¶ 17 (9th Dist.). While many factors overlap with those set forth in R.C. 2151.414(D)(1), separate factors that are relevant in this case are the child's adjustment to "home, school, and community[]" and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d),(f).

{¶26} To begin with, at the final dispositional hearing, MCJFS presented a significant amount of testimony pertaining to the Mother's circumstances before M.K. or Z.A. were adjudicated dependent. Although that evidence was relevant to the background of this case, because it detailed the problems that Mother was required to resolve, it had little bearing on the best interest of M.K. at the time of the hearing. "The purpose of a hearing on competing legal

custody motions is not to relitigate circumstances that predated the adjudication of the child." *In re A.D.*, 2022-Ohio-777, ¶ 15 (9th Dist.). Instead, the focus should have been on the current parenting ability of the potential custodians and whether it was in the best interest of M.K. to be placed in the legal custody of Grandparents or Mother. *Id.*

**{¶27}** Moreover, most of the evidence presented by MCJFS pertained to Mother's case plan compliance and whether it was in the best interest of M.K. (or Z.A.) to be returned to Mother's legal custody. The evidence was not disputed that Mother had been cooperative with MCJFS and had substantially complied with the reunification requirements of the case plan. Mother was sober, had separated from Father, was still actively engaged in counseling, and had stable income and suitable housing. MCJFS agreed that Mother demonstrated a period of stability and an ability to make appropriate decisions and function well on her own.

**{¶28}** According to the evidence presented at the hearing, the agency's biggest concern about Mother having custody of M.K. was that she would fail to protect the child from Father. Although Mother and Father both testified that their relationship was over, MCJFS believed that they continued to have contact and that Mother's potential ongoing contact with Father posed a threat to herself and her children. The agency's evidence about Mother's parenting ability, however, was relevant only to whether it was in the best interest of M.K. to be returned to Mother's home. Even if the trial court correctly denied Mother's motion for legal custody, legal custody of the child did not go to Grandparents by default.

**{¶29}** Instead, MCJFS had the burden to demonstrate that legal custody to Grandparents was in the best interest of M.K. In addressing the required best interest factors, however, the trial court had almost no evidence to consider. For example, the trial court was required to consider M.K.'s interaction with Grandparents and others in their household and the related factor of her

adjustment to home, school, and community while living in their home. The trial court heard brief testimony from Father that Grandparents had no drug or alcohol problems, were providing M.K. with appropriate care, and were meeting the child's basic needs. Father gave no specific details about the child's circumstances in Grandparents' home. Other witnesses, including Mother, also testified without any details that Grandparents were providing M.K. with appropriate care. The only evidence about M.K.'s home environment was that she lived with Grandparents and her two older siblings and that she was attending kindergarten and daycare. The trial court explicitly found that M.K. had adjusted to living in Grandparents' home and was bonded with them and her older half-siblings, but no evidence was presented at the hearing to support those findings.

{¶30} MCJFS failed to present evidence about the interrelationships between Grandparents and M.K., M.K.'s relationship with her siblings who lived in the home, the circumstances in the home, or Grandparents' financial and physical ability to provide a permanent home for M.K. in addition to her two older siblings. In fact, the caseworker testified that, ten months before the hearing, Grandfather, who the caseworker estimated was over 70 years old, had expressed to the caseworker that he had health problems and that having ongoing placement of M.K. was causing him stress. Grandfather explained at that time that he had not realized that M.K. would remain in Grandparents' home for as long as she had, and that Grandparents were not willing to provide M.K. with a permanent home.

{¶31} Without any explanation in the record, however, Grandparents apparently changed their minds shortly before the scheduled permanent custody hearing and signed a statement of understanding to assume legal custody of M.K. Grandparents did not attend the hearing to explain their decision or state their intentions and MCJFS was unable to offer any explanation for why

Grandparents decided at the last minute to assume custody. The guardian ad litem also testified that he did not know why Grandparents waited so long to request legal custody of M.K.

{¶32} The guardian ad litem further testified that his ability to make a recommendation in this case had been hampered by the agency switching its dispositional motion from permanent custody to legal custody a mere seven days before the hearing. The guardian ad litem recommended legal custody to Grandparents, but explained only that Grandparents were more "stable" than Mother. He did not provide any explanation for that assessment.

{¶33} The agency's primary concern about Mother having custody of M.K. was that she would not protect the child from Father, but MCJFS apparently trusted Grandparents to supervise Father's visits with M.K. throughout this case. It presented no evidence, however, about any of those visits. Although the trial court found that "Grandparents can stand up to [Father] and act in [M.K.'s] best interest[,]" there was no evidence at the hearing to support that finding.

{¶34} Father testified that his visits with M.K. were supervised by Grandparents, but no other witness verified that his visits were being supervised by Grandparents or that Grandparents had the ability to protect M.K. if Father were to become hostile or violent. Several witnesses, including Mother, testified that they believed Grandparents would protect M.K. from Father, but no evidence was presented to explain the relationship between Grandparents and Father, whether he had ever been violent toward them, or whether they could protect M.K. from Father. The caseworker and her supervisor both testified that they believed that Grandparents had and would continue to appropriately supervise Father's visits with M.K. because they had not received any reports about problems with Father's visits. On cross-examination by Mother's counsel, the caseworker supervisor clarified that Grandparents "haven't shown that they couldn't protect [the

child], at least while I had the case [five months earlier.]" That evidence did not demonstrate that Grandparents had the ability to protect M.K. from Father.

{¶35} Finally, MCJFS failed to present evidence about the relationship between Mother and Grandparents and whether Grandparents would respect her residual parental rights, including her right to regularly visit her child. One of the caseworkers testified that Mother was concerned that the birth of Z.A. from an extramarital affair put a strain on her relationship with Grandparents. Mother worried that Grandparents might punish her by restricting her ability to visit with M.K. and her other children, and that Grandparents might not allow visitation between Z.A. and M.K. if they were to receive legal custody. Further, although MCJFS had been encouraging Mother to divorce Father, Mother was concerned that a divorce might further alienate Grandparents. In addition to her concern that Grandparents might limit Mother's visitation time, Mother was afraid that she would lose Grandparents as part of her parental support system. Because Grandparents did not testify at the hearing, none of Mother's concerns were addressed. Consequently, there was not sufficient evidence presented to support the trial court's finding that Grandparents would be likely to facilitate visitation between Mother and M.K.

{¶36} After a thorough review of the record, this Court is left with more questions than answers about whether legal custody of M.K. to Grandparents was in the child's best interest. Given the limited evidence before the trial court, we must conclude that MCJFS failed to prove, by a preponderance of the evidence, that it was in the best interest of M.K. to be placed in the legal custody of Grandparents. For that reason, Mother's fifth assignment of error is sustained, as that issue is dispositive. This Court declines to address the substantive issues Mother raises in her first and third assignments of error.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY TO NON-PARENT RELATIVES WITHOUT CONSIDERATION OR FINDINGS [MCJFS] UTILIZED REASONABLE CASE PLANNING AND DILIGENT EFFORTS TOWARD REUNIFICATION WITH MOTHER.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED IN PRESUMPTIVELY GRANTING LEGAL CUSTODY OF M.K. TO PATERNAL GRANDPARENTS WITHOUT CONSIDERATION OF WHETHER A RETURN OF CUSTODY TO MOTHER IS IN THE CHILD'S BEST INTEREST AND WITHOUT FINDING A RETURN TO MOTHER'S HOME [IS] CONT[R]ARY TO THE CHILD'S BEST INTEREST.

**{¶37}** Mother's second and fourth assignments of error have been rendered moot by this Court's disposition of her fifth assignment of error and will not be addressed on the merits. *See* App.R. 12(A)(1)(c).

III.

**{¶38}** Mother's fifth assignment of error is sustained and the judgment of the Medina County Court of Common Pleas, Juvenile Division, is reversed and remanded to the trial court on that basis for proceedings consistent with this decision. The merits of Mother's remaining assignments of error were not addressed.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

STEVENSON, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JACQUELYN M. DOSSI, Attorney at Law, for Appellant.

MERISSA COOPER, Attorney at Law, for Appellee.

PAUL GRANT, Attorney at Law, for Appellee.

NOWAR KATIRJI, Guardian ad Litem.