[Cite as *In re T.G.O.*, 2017-Ohio-151.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

IN THE MATTER OF: T.G.O.  :
                                             CASE NO. CA2016-02-009
                                  :
                                             O P I N I O N
                                  :                       1/17/2017
                                              :

APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20540010

Thomas J.C. Arrington, 67 East High Street, London, Ohio 43140, Guardian Ad Litem

Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, attorney for child

LeeAnn M. Massucci, 250 Civic Center Drive, Suite 360, Columbus, Ohio 43215, for appellee

Petroff Law Offices, LLC, Erika M. Smitherman and Michelle J. Askins, 140 East Town Street, Suite 1070, Columbus, Ohio 43215, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, the father of T.G.O. ("Father"), appeals from the decision of the Madison County Court of Common Pleas, Juvenile Division, modifying a term of the shared parenting plan he entered into with appellee, the mother of T.G.O. ("Mother"), designating her the residential parent of T.G.O. for school purposes. For the reasons outlined below, we affirm.

{¶ 2} The child at issue, T.G.O., was born on December 21, 2004. Mother and Father were never married. Following T.G.O.'s birth, the parties entered into a shared parenting plan that was approved by the juvenile court and entered as a final decree of shared parenting on July 14, 2005. As part of that shared parenting plan, Father was designated the residential parent of T.G.O. for school purposes. It is undisputed that at this time both Mother and Father lived in Madison County.

{¶ 3} On November 7, 2014, upon notifying the juvenile court of her intent to relocate to Morrow County to live with her newly married husband, Mother filed a motion requesting the juvenile court to modify a term of the parties' shared parenting plan to designate her as the residential parent for school purposes. The juvenile court then scheduled the matter for a hearing and a guardian ad litem was appointed for the child. However, due to a conflict between T.G.O.'s stated wishes to have Mother designated as residential parent for school purposes and the guardian ad litem's recommendations to have Father remain as residential parent for school purposes, an attorney advocate was also appointed for T.G.O. The juvenile court later held an in camera interview with T.G.O. in order to personally address the child and ask her about her wishes. At the time of this in camera interview, T.G.O. was ten years old.

{¶ 4} On December 1 and December 17, 2015, the juvenile court held a two-day hearing on the matter. During this hearing, both Mother and Father testified. Thereafter, on January 29, 2016, the juvenile court issued a decision granting Mother's motion to modify a term of the parties' shared parenting plan upon finding it was in T.G.O.'s best interest to designate Mother as the residential parent for school purposes. In support of this decision, because there were factors favoring both Mother and Father, the juvenile court found T.G.O.'s wishes as expressed during its in camera interview with her "tipped the scales in this case" for T.G.O. appeared "bright and well spoken" and "clear in her stated desire to reside

with Mother" and attend school in Morrow County. The juvenile court further found that T.G.O. was "very persuasive in the overall analysis of her best interest" since she appeared "sincere and truthful in her steadfast desire to live with her Mother and ultimately gave deference to [T.G.O.'s] wishes."

{¶ 5} Father now appeals from the juvenile court's decision, raising two assignments of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT THERE HAD BEEN A CHANGE OF CIRCUMSTANCES SUFFICIENT TO WARRANT A CHANGE IN SCHOOL PLACEMENT PARENT.

{¶ 8} In his first assignment of error, Father argues the juvenile court erred by finding there was a change in circumstances sufficient to modify a term of the parties' shared parenting plan to designate Mother as the residential parent of T.G.O. for school purposes. However, a simple review of the record indicates the juvenile court never made such a finding, nor was it required to in accordance with this court's unanimous decision in *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220. As this court explicitly stated in that case:

> The specific issue presented by Mother in this assignment of error is whether the juvenile court's decision to change the designation of the child's residential parent for school purposes from Mother to Father is a modification of "a prior decree allocating parental rights and responsibilities" under R.C. 3109.04(E)(1)(a), *or* merely a modification of a "term" of the parties' shared parenting plan under R.C. 3109.04(E)(2)(b). We conclude that by changing the designation of the child's residential parent for school purposes from Mother to Father, the juvenile court merely modified a *term* of the parties' shared parenting *plan* that had been incorporated into the parties' shared parenting decree, and therefore, the juvenile court was not required to find that a change in circumstances of the child or either parent had occurred at some point after the prior shared parenting decree was issued before modifying this term of the

- 3 -

parties' shared parenting plan.

(Emphasis sic.) *Id.* ¶ 38.

{¶ 9} Therefore, in accordance with this court's decision in *In re E.L.C.*, we find no merit to Father's first assignment of error. *See also Fritsch v. Fritsch*, 1st Dist. Hamilton No. C-140163, 2014-Ohio-5357, ¶ 21 ("[t]he court did not have to determine that a change of circumstances had occurred to modify the designation of the residential parent for school purposes"); *Ralston v. Ralston*, 3d Dist. Marion No. 9-08-30, 2009-Ohio-679, ¶ 17 ("the trial court was required to apply the standard as articulated in R.C. 3109.04(E)(2)(b)" when modifying the designated residential parent for school purposes). Accordingly, Father's first assignment of error is overruled.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT NAMED [MOTHER] AS RESIDENTIAL PARENT FOR SCHOOL PLACEMENT PURPOSES.

{¶ 12} In his second assignment of error, Father argues the juvenile court abused its discretion by modifying a term of the parties' shared parenting plan to designate Mother as the residential parent of T.G.O. for school purposes. We disagree.

{¶ 13} Changing the residential parent for school purposes is a modification of a term of a shared parent plan that is governed by R.C. 3109.04(E)(2)(b). *In re E.L.C.*, 2015-Ohio-2220 at ¶ 42. Pursuant to that statute:

> The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

**{¶ 14}** In determining the best interest of a child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors. *In re A.D.B.*, 12th Dist. Butler No. CA2015-10-180, 2016-Ohio-7186, ¶ 12. These factors include, but are not limited to: (1) the wishes of the child's parents regarding the child's care; (2) the wishes and concerns of the child, as expressed to the court, if the court conducted an in camera interview; (3) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to the child's home, school, and community; and (5) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. R.C. 3109.04(F)(1)(a), (b), (c), (d), and (f). "No one factor is dispositive." *Carr v. Carr*, 12th Dist. Warren Nos. CA2015-02-015 and CA2015-03-020, 2016-Ohio-6986, ¶ 22. Rather, the juvenile court has discretion to weigh any and all relevant factors as it sees fit. *Id.*

**{¶ 15}** The juvenile court's determination of what is in the best interest of a child will not be reversed absent an abuse of discretion. *Sayre v. Furgeson*, 3d Dist. Shelby No. 17-15-16, 2016-Ohio-3500, ¶ 38. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude." *Rarden v. Rarden*, 12th Dist. Warren No. CA2013-06-054, 2013-Ohio-4985, ¶ 10.

**{¶ 16}** In this case, the record shows that both Mother and Father are good and loving parents who share a strong bond with T.G.O. The record also indicates that T.G.O. has a

good relationship with both of her parents, her maternal and paternal grandparents, as well her half-siblings, step-siblings, stepfather, cousins, and Father's long-time girlfriend. As the juvenile court stated, "[t]estimony overwhelmingly showed [T.G.O.] gets along with everyone!"

{¶ 17} However, although living and attending school in Madison County for her entire life, the record indicates T.G.O. had limited interaction with anyone in the Madison County area other than Father, a few of her classmates, and occasionally her cousins and paternal grandparents. On the other hand, Mother testified that T.G.O. has adjusted quickly to the Morrow County community, other children in the area, and her stepfather and his extended family, among others. This includes participating in church activities and attending church camp. Although Father testified otherwise, the record also indicates that both Mother and the guardian ad litem believe T.G.O. would have no issues being able to quickly adjust to changing schools from those located in Madison County to those located in Morrow County.

{¶ 18} Unfortunately, the record also indicates that both Mother and Father have found ways to interfere with the others' requests for parenting time during special events; most notably, when Father refused to allow any reasonable accommodations to Mother so that T.G.O. could attend Mother's wedding or when Mother refused the same reasonable accommodations to Father when his family was visiting from out of state. Yet, although neither party is completely blameless, as the juvenile court determined, the record indicates Father "exhibited a rigidness that was palpable" towards Mother and "seemed completely incapable of cooperating with Mother on any matter." A review of the record supports this finding.

{¶ 19} The record also indicates that Father has generally refused to communicate with Mother through any other method except over the phone or in person (conversations he then admittedly records) and desires to have no relationship with Mother whatsoever, although he acknowledges maintaining a daily "custody log" of Mother's activity. Father

testified that he was aware T.G.O. knew of both these activities, activities the juvenile court found assuredly indicated T.G.O. knew of Father's "disdain" for Mother. The record further indicates that T.G.O., who Father referred to as "the child" several times during the two-day hearing, has been seen with her "head down" and "shoulders drooping" when Father confronts Mother, such as when Father forced Mother to come to the door to pick T.G.O. up as opposed to merely letting her leave with her stepfather.

{¶ 20} The guardian ad litem recommended that Father remain as the residential parent for school purposes. However, when asked about her wishes, the record indicates T.G.O. repeatedly stated that she wanted to reside with Mother and attend school in Morrow County. As noted above, the juvenile court found T.G.O.'s wishes as expressed during its in camera interview were "very persuasive in the overall analysis of her best interest" for she appeared "bright and well spoken" and was "clear in her stated desire to reside with Mother." Although Father insists that T.G.O. had "been manipulated" by Mother, the juvenile court specifically found that T.G.O. was "sincere and truthful in her steadfast desire to live with her Mother" and attend school in Morrow County.

{¶ 21} After a thorough review of the record, we find the trial court did not abuse its discretion in modifying a term of the parties' shared parenting plan upon finding it was in T.G.O.'s best interest to designate Mother as the residential parent for school purposes. Just as the juvenile court found, it is clear that both Mother and Father love T.G.O. and want what is best for her. However, when T.G.O. was specifically asked, the record indicates T.G.O. repeatedly stated to both the guardian ad litem and her attorney advocate, as well as to the juvenile court itself, that she wanted to reside with Mother and attend school in Morrow County.

{¶ 22} Again, as the juvenile court stated, because there were factors favoring both Mother and Father, this "tipped the scales in this case[.]" While Father claims otherwise,

such a determination was well within the juvenile court's purview for the juvenile court is in the best position to determine the credibility of the witnesses. The juvenile court also has discretion to weigh any and all of the relevant factors as it sees fit. This is true despite the fact that the guardian ad litem recommended Father remain the residential parent for school purposes, for it is well-established that the juvenile court was not bound to follow a guardian ad litem's recommendation. *Gibson v. Gibson*, 12th Dist. Clinton No. CA2016-01-002, 2016-Ohio-4996, ¶ 19.

{¶ 23} In so holding, we note that Father repeatedly states that the juvenile court's findings demonstrate a "blatant disregard of relevant testimony" that "is highly concerning and suggests possible bias." However, simply because the juvenile court, as the trier of fact, either did not find Father's testimony credible, or determined that such testimony was not entitled to any greater weight than it received, does not mean that the juvenile court was somehow biased against him, nor does this indicate the juvenile court failed to take Father's testimony into consideration when reaching its decision. Again, the juvenile court is in the best position to determine the credibility of the witnesses and has discretion to weigh any and all of the relevant factors as it sees fit.

{¶ 24} We further note that Father claims the juvenile court ignored testimony on what he believes are two highly relevant factors in this case; namely, R.C. 3109.04(F)(1)(g), concerning whether either parent has failed to make required child support payments, and R.C. 3109.04(F)(1)(j), which deals with whether either parent is planning to establish a residence outside of the state. However, as Father readily admits, there were no child support payments to consider, thus making that factor inapplicable to the juvenile court's best interest analysis. Moreover, although Mother did move from Madison County to Morrow County, a distance of approximately 70 miles, there is nothing in the record to suggest that Mother has any plans to move outside of the state, thus rendering that factor also

inapplicable to the juvenile court's best interest analysis. Father's attempts to construe these provisions more broadly in an effort to encompass facts not covered by those provisions is improper.

{¶ 25} In light of the foregoing, we find nothing about the juvenile court's decision to modify a term of the parties' shared parenting plan to designate Mother as the residential parent of T.G.O. for school purposes that would render that decision unreasonable, arbitrary, or unconscionable so as to constitute an abuse of the juvenile court's discretion. Therefore, having found no abuse of discretion in the juvenile court's decision, Father's second assignment of error is without merit and overruled.

{¶ 26} Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.