[Cite as *In re P.B.*, 2021-Ohio-414.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2019-10-108 |
| P.B. | : | O P I N I O N<br>2/16/2021 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 17-D000147

Eric L. Anderson, 3805 Edwards Road, Suite 550, Cincinnati Ohio 45209, for appellant

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Childrens' Services

Mark Raines, 246 High Street, Hamilton, Ohio 45066, for appellee, Father

James A. Dearie, 12 East Warren Street, Lebanon, Ohio 45036, for appellee, Mother

Tibbs Law Office, Sarah E. Michel, 1329 East Kemper Road, Suite 4230, Cincinnati, Ohio 45246, for appellees, Jeremy and Julie Humble

Griff Nowicki, 202 N. Limestone Street, Suite 250, Springfield, Ohio 45503, for appellees, Coral Beach-Johnson and Loretta Johnson

Andrea Ostrowski, 20 South Main Street, Springboro, Ohio 45066, guardian ad litem

**M. POWELL, P.J.**

{¶ 1} Appellant, the biological grandfather of P.B., appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, granting legal custody of P.B. to appellees, Jeremy and Julie Humble (collectively, the "Humbles"). For the reasons outlined below, we affirm the juvenile court's decision.

{¶ 2} P.B. was born on August 7, 2016. P.B.'s father was initially unknown. On April 6, 2017, Warren County Children Services (WCCS) filed a complaint with the juvenile court alleging that P.B. was a dependent child. According to the complaint, P.B. had been injured while in Mother's care and there were allegations that Mother was abusive.

{¶ 3} On September 13, 2017, P.B. was placed into the emergency shelter care of WCCS who then placed him in foster care with the Humbles. Subsequently, P.B. was adjudicated a dependent child and placed in the temporary custody of WCCS. P.B. was continued in the foster care of the Humbles, where he has remained throughout the pendency of this case.

{¶ 4} WCCS had initially sought reunification between P.B. and Mother. However, after WCCS obtained a six-month extension of the juvenile court's order for temporary custody in September 2018, Mother failed a drug test and was no longer compliant with her case plan. Based upon these issues, WCCS identified Roy and Loretta Johnson (collectively, the "Johnsons") as a potential placement for P.B. The Johnsons have custody of P.B.'s half-sister, A.J., who is the child of Mother and the Johnsons' son.

{¶ 5} In March 2019, WCCS sought a second sixth-month temporary custody extension. In its motion, WCCS referred to Mother's failed drug test and her case plan non-compliance. WCCS's motion also identified the Johnsons as a potential placement for P.B. and recommended further assessments. Later, WCCS moved to expand visitation between P.B. and the Johnsons with the goal of placing him in their home.

{¶ 6} On March 19, 2019, the guardian ad litem ("GAL") filed a motion for permanent custody of P.B. In response, the Johnsons filed a motion for legal custody of P.B. WCCS also moved for P.B. to be placed in the legal custody of the Johnsons. Subsequently, the GAL filed a motion that P.B. be placed in the legal custody of the Humbles. The Humbles then moved for legal custody of P.B.

{¶ 7} A final hearing was scheduled for June 12, 2019 but was continued until July 26, 2019. The hearing was again rescheduled until September 26, 2019, after a putative father of P.B. was identified. W.S. ("Father") was confirmed to be P.B.'s father on August 19, 2019. On September 12, 2019, Father moved to continue the final hearing, alleging that his father, appellant, had contacted an attorney and expressed an interest in custody of P.B. The juvenile court denied the motion to continue. Then, on September 16, 2019, appellant moved to intervene and filed a motion for legal custody of P.B. or, alternatively, for visitation rights with P.B. In his motion, appellant informed the court that he resided in Florida and was in the process of completing an interstate home study. Appellant requested a continuance at the final hearing, which was denied by the juvenile court.

{¶ 8} At the beginning of the hearing, the juvenile court dismissed the GAL's motion for permanent custody. During the hearing, the juvenile court heard testimony from the Johnsons, the Humbles, the GAL, and appellant. Since P.B. had spent significant time with both the Johnsons and the Humbles, the juvenile court heard testimony concerning P.B.'s behavior in each household and the manner in which the parties cared for him. In addition, the juvenile court heard statements from the attorneys for Mother and Father expressing their wishes that P.B. be placed in the custody of the Johnsons to facilitate the relationship of P.B. and his half-sibling. Appellant also testified about his living situation and his desire for P.B. to live with him or, alternatively, to establish a visitation schedule with him. Following the hearing, the juvenile court issued its decision awarding legal custody of P.B.

to the Humbles. The juvenile court also granted visitation to the Johnsons, Father, and appellant. Appellant, with support of Father, now appeals the juvenile court's decision, raising two assignments of error for review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN AWARDING CUSTODY TO THE HUMBLES

{¶ 11} In his first assignment of error, appellant argues the juvenile court erred by awarding custody of P.B. to the Humbles. We find no merit in appellant's argument.

{¶ 12} Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated an abused, neglected, or dependent child, the juvenile court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" Unlike permanent custody, legal custody merely vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact. *In re L.C.*, 12th Dist. Warren No. CA2019-08-086, 2020-Ohio-4629, ¶ 13.

{¶ 13} A child who has been adjudicated dependent may be placed in the legal custody of a nonparent "upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors, including those factors specified therein. *In re L.T.*, 12th Dist. Butler Nos. CA2016-03-048 and CA2016-03-058, 2016-Ohio-5272, ¶ 60. These factors include: (1) the wishes of the child's parents regarding the child's care; (2) the wishes and concerns of the child, as expressed to the juvenile court; (3) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to the child's home, school, and community; (5) the

- 4 -

mental and physical health of all persons involved; and (6) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. R.C. 3109.04(F)(1)(a) thru (f).

{¶ 14} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. As a result, the standard of review in custody decisions is whether the juvenile court abused its discretion. *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re C.A.*, 2015-Ohio-1410 at ¶ 15. A reviewing court must not substitute its judgment for that of the juvenile court when applying the abuse of discretion standard. *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 26.

{¶ 15} During the final hearing, the juvenile court heard from Mother's counsel that she supported the Johnsons' motion for legal custody. Father's counsel indicated that Father supported appellant's motion, as he does now on appeal, but also expressed support for the Johnsons' motion for legal custody.

{¶ 16} The wishes and concerns of P.B. were not expressed to the juvenile court due to P.B.'s tender age.

{¶ 17} The juvenile court heard substantial testimony concerning P.B.'s interactions and interrelationships with his parents, siblings and the other persons significantly affecting

his best interests.[1] The record reveals that P.B., who was three years old at the time of the court's decision, had been in the Humbles' care since September 2017. Julie Humble testified that they have three biological children and another child in the process of being adopted. Julie testified that P.B. is close with all of her children and that he loves to play and interact with them. Additionally, P.B. has contact with the Humbles' extended family who treat him as their own.

{¶ 18} The GAL testified that P.B. interacts with the Humble children in their home as if they are siblings. P.B. goes outside to play with them and wants their attention like a typical young sibling. The GAL represented that P.B. acts as if the Humbles are his parents. P.B. is incorporated into their home life and likes the Humble children to play with him.

{¶ 19} In contrast to his close bonded relationship with the Humbles, P.B. has only met appellant once, the day before the final hearing.

{¶ 20} As to the fourth factor, the juvenile court also heard substantial evidence of P.B.'s adjustment to his home, school, and community. Julie testified that she believed it would be in P.B.'s best interest to give him a sense of permanency in their family, as he has been fully integrated into their family. The Humbles reside in a four-bedroom home in Lebanon and have appropriate resources to provide for P.B. and their four other children. Jeremy Humble is a security engineer while Julie is a stay-at-home mother. Julie stated that her family has health insurance which would cover P.B. if they were granted legal custody. Julie also testified that she has been in charge of all of P.B.'s medical needs since September 2017.

{¶ 21} The Humbles, including P.B., have close relationships with family residing locally and participate in activities, such as Sunday School and the YMCA. They are also

---

1. The juvenile court also heard substantial testimony concerning the Johnsons, but since they are not a party to this appeal, we have omitted further discussion in this opinion.

active in their neighborhood. Julie testified that P.B. has friends in the community who play in the pool, the neighborhood playground, and at each other's homes.

{¶ 22} Julie testified that P.B. is currently enrolled in Head Start and has been for approximately one year. She indicated that P.B. was making progress developmentally and was looking into preschool for him.

{¶ 23} The GAL testified that P.B. is funny, talkative, and comfortable in the Humbles' home. She further found him to engage with other children in the community and that the Humbles have introduced a structured life for him in the community.

{¶ 24} As to appellant, the record reflects that he lives in Florida and has done so for the past 18 years. At the time of the final hearing, appellant testified that he resided in a fifth-wheel type camper situated in a storage yard and sitting under a 25 by 25 pole barn due to concerns with the trailer's roof. Appellant also testified that he is not employed due to a disability but does not receive disability benefits because of ongoing legal issues. Appellant stated that he provides for himself by buying and selling things to pay for his utility bills.

{¶ 25} As to the fifth factor, Julie testified that neither she nor her husband have any mental or physical disabilities that affect their ability to parent. Appellant testified that he is disabled and has herniated discs in his back.

{¶ 26} As to the sixth factor, appellant stated that he would like visitation with P.B. if he were not granted legal custody. Julie stated that she would continue to foster relationships with P.B.'s extended family and would follow any court orders that the court determined were in P.B.'s best interests.

{¶ 27} On appeal, appellant argues the juvenile court erred by failing to grant his motion to continue the hearing to permit the completion of the interstate home study. Because of this, appellant claims that the juvenile court did not adequately consider the

best interest factors contained in R.C. 3019.04(F), in particular those factors contained in R.C. 3019.04(F)(1)(c)-(e) involving P.B.'s interaction and relationships, adjustment to home, school, and community, and mental and physical health of all persons. Appellant relies on *State v. Unger*, 67 Ohio St.2d 65 (1981), which involved a denial of a motion for continuance in a criminal matter where the Supreme Court ultimately concluded that the trial court lawfully exercised its discretion in refusing to grant a second continuance. *Id.* at 68. In so doing, the Court noted that a court's right to control its own docket should be balanced by the public's interest in the prompt and efficient dispatch of justice and stated:

> In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

{¶ 28} Following review, we find the juvenile court did not abuse its discretion in denying appellant's request for a continuance or by granting legal custody of P.B. to the Humbles. As noted above, the juvenile court heard substantial evidence as to the relevant factors. P.B. is bonded with the Humbles and has been in their custody and care for nearly two years. In contrast, appellant was essentially a stranger to P.B., having met him only briefly the day prior to the hearing. In the Humbles' care, P.B. lives in a stable family residence with ties to the community. Meanwhile, appellant resides in an unfamiliar community in a trailer that does not currently include a room for P.B.

{¶ 29} As it relates to the *Unger* factors cited by appellant, including the "unique facts of each case," we agree that he was not necessarily at fault for his late addition to this case

once paternity was established.[2]  However, in this case, P.B. is a three-year-old child who has been in custodial purgatory for two years as this case has languished.  The juvenile court had already granted two six-month extensions of temporary custody and, pursuant to R.C. 2151.415(D)(4), no further extensions were permissible.  *In re N.M.P.*, 160 Ohio St.3d 472, 2020-Ohio-1458, ¶ 18.  In addition, the final hearing had already been continued on two prior occasions and appellant's attempt to alert the court that he was in the process of seeking an interstate home study occurred only ten days prior to the final hearing.  Appellant speculates that the length of delay to complete the home study would be minimal.  However, the duration of the delay was indeterminate and entirely dependent upon the Florida authorities.

{¶ 30} Furthermore, the interstate home study would address only whether appellant was an appropriate custodian and whether his home was an appropriate placement for P.B.  However, nothing suggests that an approved home study would have been the tipping point between awarding legal custody to the Humbles or appellant.  An approved home study would not outweigh the substantial testimony of P.B.'s interactions, bonds, and community ties with the Humbles and the fact that appellant was a virtual stranger to P.B.  Considering the record before the juvenile court, we find the court did not err by granting custody to the Humbles or in denying a continuance of the September 26, 2019 final hearing.  As a result, we find appellant's first assignment of error is without merit and is hereby overruled.

{¶ 31} Assignment of Error No. 2:

---

2. The record reveals that paternity was established on August 19, 2019.  However, appellant admitted that he suspected that he may be the child's grandfather much earlier.  When asked if he knew about P.B. since he was born, appellant stated "I assumed possibly when [Mother] was six or eight months pregnant she was saying oh I'm pregnant with your child [sic] but [Father] and her being on the outs at the time I wasn't going to argue with him about it."  Appellant also confirmed that he knew he was related to P.B. when Mother sent him a photo of the child, noting that he "didn't need the paternity test" to confirm his beliefs.

{¶ 32}  THE TRIAL COURT ERRED IN NOT GRANTING [APPELLANT] A SPECIFIC VISITATION SCHEDULE.

{¶ 33}  In his second assignment of error, appellant argues the juvenile court erred by not granting him a specific visitation schedule.  Appellant's argument is without merit.

{¶ 34}  The juvenile court ordered the following visitation schedule for appellant:

> Effective September 29, 2019, Father and [appellant] * * * shall be able to visit [P.B.] as agreed upon by [appellant] * * * and the Humbles * * *.  Additionally, reasonable telephone contact shall be permitted with [P.B.], as agreed to by * * * the Humbles * * *.

{¶ 35}  Following review, we find the juvenile court did not err by not granting a more specific visitation schedule.  This court has previously noted that a juvenile court has broad discretion in deciding matters regarding visitation rights of grandparents.  *C.B. v. K.R.*, 12th Dist. Fayette No. CA2019-02-002, 2019-Ohio-3621, ¶ 11.  As noted above, the juvenile court heard ample evidence concerning P.B.'s relationships with the parties and in his upbringing since placement with the Humbles.  Despite only meeting P.B. once, the day before, the juvenile court granted appellant visitation and telephone contact with P.B. upon agreement with the Humbles to facilitate some future relationship.  Based upon the evidence, the juvenile court did not err in establishing this visitation schedule.  Appellant's second assignment of error is overruled.

{¶ 36}  Judgment affirmed.


S. POWELL and PIPER, JJ., concur.