[Cite as *Reisinger v. Topping*, 2021-Ohio-2545.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| LUCAS REISINGER, | : | |
| Appellant, | : | CASE NO. CA2020-12-023 |
| | : | O P I N I O N |
| - vs - | | 7/26/2021 |
| | : | |
| SHANNON TOPPING, | : | |
| Appellee. | : | |


APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 21740057


Law Office of Lisa K. Meier, LLC, and Lisa K. Meier, for appellant.

Allison G. Boggs, for appellee.


**S. POWELL, J.**

{¶ 1} Appellant, Lucas Reisinger ("Father"), appeals the decision of the Madison County Court of Common Pleas, Juvenile Division, designating appellee, Shannon Topping ("Mother"), as the residential parent and legal custodian of their son, J.R. Father also appeals the juvenile court's decision denying his motion for contempt against Mother and the juvenile court's decision ordering Father to pay all court costs associated with the case. For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2}    Mother gave birth to J.R., a boy, on March 9, 2014.  Mother was unmarried at the time of J.R.'s birth.  There is no dispute that Father, a former heroin addict and convicted felon, is J.R.'s father.

{¶ 3}    On June 1, 2017, Father's motion to allocate parental rights and responsibilities for J.R. was filed with the juvenile court.[1]  After several delays, and following a hearing before a juvenile court magistrate, the juvenile court appointed J.R. with a guardian ad litem.  The juvenile court also issued a temporary order awarding Father parenting time with J.R.  The juvenile court filed this temporary order on November 15, 2017.  After several more delays, and at the juvenile court's request, Father filed a motion requesting the juvenile court reactivate the case and schedule the matter for a final hearing.  Father filed this motion on March 12, 2018.  The juvenile court granted Father's motion to reactivate the case and scheduled the matter for a final hearing before a juvenile court magistrate on May 3, 2018.

{¶ 4}    Due to still further delays, the final hearing on Father's motion did not begin until July 18, 2018.  The final hearing was then continued for additional testimony and evidence nine times; October 2, 2018, October 4, 2018, October 11, 2018, October 18, 2018, January 17, 2019, March 19, 2019, April 2, 2019, August 8, 2019, and November 21, 2019.  During this ten-day hearing, the magistrate heard testimony from a multitude of witnesses.  This includes testimony from J.R.'s guardian ad litem and J.R.'s mental health counselor.  This also includes testimony from a licensed psychologist appointed by the juvenile court to provide a custody evaluation.  This was in addition to lengthy, multiple-day

---

1. Father's motion had previously been filed in the Union County Court of Common Pleas, Juvenile Division, on March 10, 2017.  However, upon finding venue was not proper in Union County "as neither of the parties nor the child reside in Union County," the Union County Juvenile Court transferred the case to Madison County in a decision filed on May 26, 2017.

testimony from both Father and Mother.

{¶ 5} On September 20, 2018, Father filed a motion for contempt against Mother. Father subsequently amended his motion for contempt on December 20, 2018. To support his motion for contempt, Father argued that Mother had violated the juvenile court's temporary parenting time order by "taking actions to purposefully prevent" Father from exercising his parenting time with J.R. during the weekends of September 7, 2018 and November 21, 2018. The magistrate heard testimony and took evidence on Father's motion for contempt as part of the ten-day final hearing on Father's motion to allocate parental rights and responsibilities for J.R.

{¶ 6} On August 10, 2020, the magistrate issued a decision designating Mother as residential parent and legal custodian of J.R. Within that same decision, the magistrate denied Father's motion for contempt against Mother. Shortly thereafter, on August 21, 2020, Father filed multiple objections to the magistrate's decision. Father then supplemented his objections to the magistrate's decision on October 23, 2020.

{¶ 7} On October 27, 2020, after conducting an independent review of the record, which the juvenile court noted included a review of "the transcript from the multiple hearings held over the course of several months," the juvenile court overruled each of Father's objections to the magistrate's decision. In so holding, the juvenile court initially stated:

> Since the parties have never been married to each other, under [R.C. 3109.042(A)], Mother is presumed by law to be the sole residential parent and legal custodian until the Court orders otherwise. Additionally the parties shall be treated equally when the Court does make a custody determination.

{¶ 8} The juvenile court then set forth its findings as it relates to its decision designating Mother as residential parent and legal custodian of J.R. Those findings included a finding that both Father and Mother would like to have custody of J.R. and that there was "no evidence" to indicate that J.R. does not have a "good relationship" with

- 3 -

Father, Mother, and his "siblings at the respective parent's home." The juvenile court also found J.R. to be "well adjusted" to both Father and Mother's homes and that there was "no persuasive evidence of any mental or physical health problems for either of the parties which would inhibit their ability to parent the child." The juvenile court further found the evidence indicated that Mother was "far more likely to honor and facilitate parenting time," whereas Father was "unwilling to compromise and will forgo parenting time rather than pick the child up at any place other than stated in the order." This was in addition to the juvenile court finding there was "no evidence of any willful denials of parenting time" by either Father or Mother.

{¶ 9} Continuing, the juvenile court found that both Father and Mother testified that they "can work together," but that "their history dictates otherwise" and that Father and Mother are "unable to communicate" with each other. The juvenile court also found the record "full of evidence" indicating Father and Mother's relationship was "bitter and hostile," which the juvenile court found "seems to originate with Father." The juvenile court further determined that the evidence indicates Father "will not and does not encourage the sharing of love, affection, and contact between [J.R.] and [Mother]." The juvenile court additionally found evidence in the record demonstrating Father and Father's family have actively tried to "alienate" J.R. from Mother. This was in addition to the juvenile court finding shared parenting would not be in J.R.'s best interests and "that a shared parenting plan would be unworkable in this case."

{¶ 10} Finally, as it relates to Father's motion for contempt alleging Mother had violated the juvenile court's November 15, 2017 temporary parenting time order, the juvenile court found Father's allegations in support of his motion were "not supported by the evidence."

{¶ 11} Father now appeals, raising three assignments of error for review.

- 4 -

**Assignment of Error No. 1:**

{¶ 12} THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY DESIGNAT[ING] MOTHER THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF [J.R.].

{¶ 13} In his first assignment of error, Father argues the juvenile court erred by designating Mother as the residential parent and legal custodian of their son, J.R. We disagree.[2]

*Standard of Review*

{¶ 14} Pursuant to R.C. 3109.042(A), "[a]n unmarried female who gives birth to a child," such as Mother, "is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian." "Custody, therefore, defaults to the mother when a child is born to an unmarried mother." *Bond v. de Rinaldis*, 10th Dist. Franklin No. 15AP-646, 2016-Ohio-3342, ¶ 25, citing *Williams v. Tumblin*, 5th Dist. Coshocton No. 2014CA0013, 2014-Ohio-4365, ¶ 21. That means that, under R.C. 3109.042(A), custody of J.R. to Mother initially arose by operation of law. *Pyburn v. Woodruff*, 2d Dist. Clark No. 2009-CA-10, 2009-Ohio-5872, ¶ 8.

{¶ 15} Once a child's father obtains a judgment establishing the existence of a parent and child relationship, the father may petition the juvenile court that he be "designated the residential parent and legal custodian of the child or for parenting time rights" under R.C. 3111.13(C). "A court designating the residential parent and legal custodian of [such a child] shall treat the mother and father as standing upon an equality when making the

---

2. Father sets forth eight issues for consideration under his first assignment of error. Although we address each of those eight issues within this opinion, we find it necessary to address those eight issues out of order for ease of discussion.

designation." R.C. 3109.042(A); *In re S.W.-S.*, 2d Dist. Miami No. 2013 CA 17, 2013-Ohio-4823, ¶ 15 (a mother and father "are on equal footing when a court makes an initial designation of the residential and custodial parent for that child" in accordance with R.C. 3109.042[A]).

{¶ 16} "R.C. 3109.04 governs the award of parental rights and responsibilities." *In re K.R.*, 12th Dist. Clermont No. CA2015-06-049, 2016-Ohio-2775, ¶ 8, citing *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 22. This includes both the juvenile court's allocation of parenting time and a juvenile court's decision designating a parent as his or her child's residential parent and legal custodian. *See* R.C. 3109.04(B)(1). As with most decisions regarding the care and custody of a children, the primary concern in making these determinations is the best interest of the child. *Bonifield v. Bonifield,* 12th Dist. Butler No. CA2020-02-022, 2021-Ohio-95, ¶ 10; *Rainey v. Rainey*, 12th Dist. Clermont No. CA2010-10-083, 2011-Ohio-4343, ¶ 12.

{¶ 17} In order to determine the best interest of a child, the juvenile court must consider all relevant factors, including those enumerated in R.C. 3109.04(F)(1). *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 19, citing *In re L.E.N.*, 12th Dist. Clinton No. CA2009-03-002, 2009-Ohio-6175, ¶ 11. These factors include, but are not limited to, the wishes of the child's parents regarding the child's care and the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest. R.C. 3109.04(F)(1)(a) and (c). These factors also include the child's adjustment to the child's home, school, and community and the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(d) and (e).

{¶ 18} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. "The standard of review in custody decisions is whether the juvenile court abused its discretion." *In re J.W.*,

12th Dist. Butler No. CA2019-07-108, 2020-Ohio-322, ¶ 23, citing *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. "An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re P.B.*, 12th Dist. Warren No. CA2019-10-108, 2021-Ohio-414, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Under these circumstances, the juvenile court's discretion "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re A.B.*, 12th Dist. Brown No. CA2016-11-021, 2017-Ohio-5776, ¶ 12, citing *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13.

*Juvenile Court's Decision Finding Mother's Testimony Credible*

{¶ 19} Father initially argues the juvenile court erred by finding Mother's testimony credible instead of "a finding that [Mother] was untruthful." To support this claim, Father sets forth various instances within Mother's testimony that he claims conclusively establishes Mother lied while on the stand. This includes, but is not limited to, Mother "falsely" testifying that: (1) Mother had never been molested by her father, J.R.'s maternal grandfather, a man who is now deceased after having passed away in a car accident on June 27, 2018; (2) J.R.'s maternal grandfather had never threatened to kill Mother; (3) J.R.'s maternal grandfather did not live with Mother during of the summer of 2018 just prior to his death; (4) J.R.'s stepfather did not vandalize the Jeep owned by the father of two of Mother's other children, a man who, as it turns out, is also Father's brother and J.R.'s uncle; and, (5) Father had abused alcohol in 2013, the year prior to J.R.'s birth.

{¶ 20} However, while there may be some inconsistencies in Mother's testimony, it is well established that issues regarding witness credibility are for the trier of fact to decide, which, in this case, was the juvenile court. *In re K.B.*, 12th Dist. Butler Nos. CA2014-02-042 thru CA2014-02-044, 2014-Ohio-3654, ¶ 66 ("issues of credibility are for the trier of

fact, not the appellate court, to determine"), citing *In re G.N.,* 170 Ohio App.3d 76, 2007-Ohio-126, ¶ 24 (12th Dist.). It is equally well established that the juvenile court, as the trier of fact, is "free to believe all, part, or none of the testimony of each witness." *In re R.,* 12th Dist. Madison No. CA2018-04-012, 2019-Ohio-1198, ¶ 30, citing *In re S.C.T.,* 12th Dist. Butler No. CA2004-04-095, 2005-Ohio-2498, ¶ 24. Given the juvenile court's decision in this matter, that is what the juvenile court did here. Therefore, while Father would like this court to sidestep the juvenile court's finding that Mother's testimony was credible, to do so would be improper and overstep this court's role as the appellate court. Father's first argument lacks merit.

*Juvenile Court's Consideration of the Guardian Ad Litem's Report and Recommendation*

{¶ 21} Father next argues the juvenile court erred when it did not "thoroughly" consider the guardian ad litem's report and recommendation prior to designating Mother as residential parent and legal custodian of J.R. Despite Father's claims, however, there is nothing in the record to indicate the juvenile court did not consider the guardian ad litem's report and recommendation prior to issuing its decision. There is also nothing in the record to indicate the juvenile court's consideration of the guardian ad litem's report and recommendation was not "thoroughly" done. The juvenile court, in fact, specifically stated in its decision overruling Father's objections to the magistrate's decision that it had an "obligation to make an independent review of the case." This would include, among other things, the guardian ad litem's report and recommendation.

{¶ 22} The juvenile court also specifically stated in its decision overruling Father's objections to the magistrate's decision that the "guardian has recommended adoption of father's shared parenting plan." This was in addition to the magistrate's statement during the final hearing on Father's motion to allocate parental rights and responsibilities for J.R. that "[t]he Court will consider [the guardian ad litem's] report." Therefore, contrary to

Father's claims, the record indicates that both the juvenile court magistrate and the juvenile court judge were aware of, and took into consideration, the guardian ad litem's report and recommendation prior to issuing their respective decisions designating Mother as J.R.'s residential parent and legal custodian.[3] Father's claims otherwise are simply incorrect.

{¶ 23} In so holding, we note that although not explicit, it appears that Father is actually arguing the juvenile court erred by not following the guardian ad litem's recommendation to adopt Father's shared parenting plan. But, as is well established, the juvenile court is not bound to follow the guardian ad litem's recommendation when deciding who should be designated a child's residential parent and legal custodian. *In re T.G.O.*, 12th Dist. Madison No. CA2016-02-009, 2017-Ohio-151, ¶ 22 ("it is well-established that the juvenile court was not bound to follow a guardian ad litem's recommendation"). Therefore, because it is the juvenile court, not the guardian ad litem, that is the ultimate decision maker regarding the best interest of a child, we will not second-guess the juvenile court's decision to disregard the guardian ad litem's recommendation in this case. Father's second argument lacks merit.

*Juvenile Court's Consideration of Psychologist's Testimony and Recommendation*

{¶ 24} Father also argues the juvenile court erred when it did not consider the testimony and recommendation offered by the court-appointed psychologist that the court designate Father residential parent and legal custodian of J.R. However, just like Father's

---

3. We note that Father also argues the magistrate erred because "it appears" the magistrate did not consider the guardian ad litem's report and recommendation "at all." Father makes similar arguments regarding other aspects of the magistrate's decision throughout his appellate brief. It is not the magistrate, however, that renders the final judgment in a case such as this. *See Schneider v. Schneider*, 12th Dist. Butler No. CA2000-05-089, 2001 Ohio App. LEXIS 165, *7 (Jan. 22, 2001) (noting that a magistrate's decision, by itself, is generally not a final appealable order). It is instead the juvenile court judge that serves as the judicial officer and ultimate factfinder. Therefore, rather than the decision issued by the magistrate, it is the decision issued by the juvenile court, along with the juvenile court's reasoning and rationale, that is the final appealable order subject to this court's review. *See Carpenter v. Johnson*, 196 Ohio App.3d 106, 2011-Ohio-4867, ¶ 9 (2d Dist.) ("[u]ntil a trial court adopts the magistrate's decision and enters judgment, the magistrate's decision is merely an interlocutory recommendation and is not a final, appealable order").

argument relating to the guardian ad litem's report and recommendation discussed above, there is also nothing in the record to indicate the juvenile court did not consider the psychologist's testimony and recommendation prior to issuing its decision designating Mother as residential parent and legal custodian of J.R. There was also nothing requiring the juvenile court to follow the recommendation offered by the psychologist. This is because, as noted above, it is the juvenile court that is the ultimate decision maker regarding the best interest of a child. Therefore, because the juvenile court ultimately decides the best interest of a child, we will also not second-guess the juvenile court's decision to disregard the psychologist's recommendation in this case. Father's third argument lacks merit.

*Juvenile Court's Factual Findings Under R.C. 3109.04(F)(1)(e)*

{¶ 25} Father additionally argues the juvenile court erred and misapplied R.C. 3109.04(F)(1)(e) by finding the issues regarding Mother's physical health would not hinder Mother's ability to effectively parent J.R. To support this claim, Father makes much ado about Mother's testimony that she had been diagnosed with Vasodepressor Syncope as a child, a condition that makes Mother periodically faint if she does not drink enough water, as well as Mother's testimony that she occasionally suffers from gastrointestinal problems, and that approximately one year after J.R.'s birth, on March 19, 2015, Mother had submitted to a test that indicated she had a high glucose level. Father, however, has failed to demonstrate how any of these minor medical conditions would, or even could, impact Mother's ability to effectively parent a child. The juvenile court, therefore, did not err by finding "[t]here was not persuasive evidence of any mental or physical health problems for either of the parties which would inhibit their ability to parent the child." This is particularly true here when considering Mother successfully gave birth to J.R.'s half-brother while this case was pending. Father's fourth argument lacks merit.

*Juvenile Court's Factual Finding Father and Father's Family Have Actively Tried to "Alienate" J.R. from Mother and Damage the Relationship Between J.R. and Mother*

{¶ 26} Father next argues the juvenile court erred by finding he and his family have actively tried to "alienate" J.R. from Mother and damage the relationship between J.R. and Mother.  However, after a thorough review of the record, we find the juvenile court's finding was supported by competent and credible evidence.  This includes evidence indicating Father had pursued this litigation so vigorously in hopes that Mother would not have access to J.R. for more than a few days each month, as well as evidence indicating Father refused to answer his telephone whenever Mother called J.R. during Father's extended parenting time.  This also includes evidence that Father refused to help Mother with any of J.R.'s extracurricular activities.  This is in addition to the testimony and evidence indicating Father's wife tried to get Mother evicted from her home by contacting Mother's landlord and claiming Mother was not abiding by the terms of her lease.  Therefore, because there was competent and credible evidence to support the trial court's finding that Father and Father's family have actively tried to "alienate" J.R. from Mother and damage the relationship between J.R. and Mother, Father's fifth argument lacks merit.

*Juvenile Court's Application of R.C. 3109.042(A)*

{¶ 27} Father further argues the juvenile court erred when it failed to properly apply the language set forth in R.C. 3109.042(A) requiring it to "treat the mother and father as standing upon an equality" when designating the residential parent and legal custodian of J.R.  Father makes this claim despite acknowledging the juvenile court specifically cited to, and explicitly quoted from, that statute within its decision designating Mother as J.R.'s residential parent and legal custodian.  Father, therefore, simply cannot establish that the juvenile court erred by failing to properly apply the language set forth in R.C. 3109.042(A).  This holds true even though Father "believes" he set forth a "significant number of

- 11 -

instances" where Mother failed to "exercise the best care" for J.R. and prevented Father from "even having parenting time in violation of the court's order." Father's sixth argument lacks merit.

*Juvenile Court Designating Mother as J.R.'s Residential Parent and Legal Custodian*

{¶ 28} Father also argues the juvenile court erred by designating Mother as residential parent and legal custodian of J.R. when the best interest factors set forth in R.C. 3109.04(F)(1) actually indicate that it should have been Father who was designated J.R.'s residential parent and legal custodian. Father's argument, however, is nothing more than a challenge to the weight the juvenile court gave to each of the best interest factors set forth in R.C. 3109.04(F)(1). This court should not, and will not, second-guess the juvenile court's decision in regard to the appropriate weight to be given to any one of those factors. *Bonifield*, 2021-Ohio-95 at ¶ 13, citing *In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 35 ("the trial court's custody decision is supported by the record, and we decline to second guess the trial court in this matter"). It is in fact well established that it is not this court's role to determine the relative weight to assign to each factor when determining what is in a child's best interest. *See Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 33 (noting that it is not this court's role to determine the relative weight to assign to each factor, in relation to the others, when determining the child's best interest); *see also Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18 ("it was the role of the trial court to determine the relative weight to assign each factor, in relation to the others, when determining the children's best interest").

{¶ 29} However, even if we were to accept Father's argument, the juvenile court's decision to designate Mother as J.R.'s residential parent and legal custodian was not an abuse of discretion. This is because the juvenile court's decision finding it was in J.R.'s best interest to designate Mother as his residential parent and legal custodian was not

arbitrary, unreasonable, or unconscionable. The juvenile court's decision was also supported by competent and credible evidence. Just as the juvenile court found, this includes evidence indicating Father was "unwilling to compromise and will forgo parenting time rather than pick the child up at any place other than stated in the order." This also includes evidence that, as noted above, Father and Father's family have actively tried to "alienate" J.R. from Mother. Therefore, because the juvenile court's decision to designate Mother as J.R.'s residential parent and legal custodian was supported by competent and credible evidence, the juvenile court did not abuse its discretion by designating Mother as the residential parent and legal custodian of J.R. Father's seventh argument lacks merit.

*Juvenile Court's Allocation of Father's Parenting Time*

{¶ 30} Father finally argues the juvenile court erred by granting him parenting time corresponding with the juvenile court's standard parenting time order. Father supports this claim by making a variety of generally unrelated claims regarding the juvenile court's allocation of parenting time. Relevant to the juvenile court's allocation of parenting time, however, is Father's argument that the juvenile court erred by only granting him parenting time corresponding with the juvenile court's standard parenting time order given that the guardian ad litem, the psychologist, and Mother all testified and recommended that parenting time be split equally between Father and Mother. But, as noted previously, it is the juvenile court, not the guardian ad litem, not the psychologist, and not even Mother, that is the ultimate decision maker regarding the best interest of a child. The juvenile court determined that granting Father parenting time corresponding with the juvenile court's standard parenting time order was in J.R.'s best interest. The juvenile court did this after reviewing the guardian ad litem's report and recommendation and hearing lengthy, multi-day testimony from both Father and Mother. Upon reviewing that testimony, as well as the guardian ad litem's report and recommendation, we find no abuse of discretion in the

juvenile court's decision. Therefore, finding no merit to any of the arguments advanced by Father herein, Father's first assignment of error is overruled.

**Assignment of Error No. 2:**

{¶ 31} THE COURT ABUSED ITS DISCRETION AND ERRONEOUSLY BELIEVED THAT APPELLEE NEEDED TO WILLFULLY DENY APPELLANT'S PARENTING TIME WHEN THE STANDARD IS THAT AN ORDER MUST EXIST, AND THE OFFENDING PARTY MUST VIOLATE A KNOWN ORDER.

{¶ 32} In his second assignment of error, Father argues the juvenile court erred by denying his motion for contempt against Mother, wherein Father alleged that Mother had violated the juvenile court's November 15, 2017 temporary parenting time order by "taking actions to purposefully prevent" Father from exercising his parenting time during the weekend of September 7, 2018 and November 21, 2018. We again disagree.

{¶ 33} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. "A court may find a party in contempt where that party fails to comply with a lawful judgment or court order." *Poynter v. Pabst*, 12th Dist. Butler No. CA2013-03-032, 2013-Ohio-5671, ¶ 10. "To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order." *In re T.D.A.J.*, 12th Dist. Butler No. CA2015-04-075, 2015-Ohio-4919, ¶ 22, citing *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35. "Once the movant establishes this prima facie case of contempt, the burden then shifts to the contemnor to prove his [or her] inability to comply with the court order." *In re A.A.J.*, 12th Dist. Warren No. CA2014-10-130, 2015-Ohio-2222, ¶ 13, citing *Dewsnap v. Dewsnap*, 12th Dist. Clermont No. CA2007-09-094, 2008-Ohio-4433. This inability, however, "cannot be self-imposed, fraudulent, or due to an intentional evasion of

- 14 -

the order." *In re J.M.,* 12th Dist. Warren No. CA2008-01-004, 2008-Ohio-6763, ¶ 50. "This court will not reverse a juvenile court's ruling on a motion for contempt absent an abuse of discretion." *In re B.B.,* 12th Dist. Clermont No. CA2019-07-057, 2020-Ohio-4007, ¶ 16, citing *In re A.A.J.* at ¶ 14.

{¶ 34} In his brief, Father goes to great lengths to summarize the testimony and evidence he believes proves Mother was in contempt for violating the juvenile court's November 15, 2017 temporary parenting time order. The juvenile court, however, conducted its own review of the record and found Father's motion for contempt against Mother was "not supported by the evidence." This includes a review of Mother's testimony explaining the circumstances that arose during the weekends Father claims he was unjustly denied his parenting time: September 7, 2018 and November 21, 2018. Given the basis upon which the juvenile court denied Father's motion, the juvenile court clearly found Father's claims alleging Mother should be found in contempt were insufficient to satisfy his burden of proof, a finding that is intrinsically connected with the juvenile court's determination that Mother's testimony was credible, whereas Father's testimony was not. We find no error in the juvenile court's decision.

{¶ 35} In so holding, and because it seems necessary given Father's arguments, we note that the juvenile court was not required to find Mother in contempt simply because Father filed a motion alleging Mother had violated the juvenile court's November 15, 2017 temporary parenting time order. It was instead Father's burden to prove Mother had violated that order by clear and convincing evidence. The juvenile court determined that Father had failed to meet his burden of proof. Given the record in this case, which, as noted above, includes lengthy, multi-day testimony elicited from both Father and Mother, the juvenile court's decision was not erroneous. Therefore, finding no error in the juvenile court's decision denying Father's motion for contempt against Mother, wherein Father

alleged that Mother had violated the juvenile court's November 15, 2017 temporary parenting time order, Father's second assignment of error also lacks merit and is overruled.

**Assignment of Error No. 3:**

{¶ 36} THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THAT THE APPELLANT PAY ALL COURT COSTS IN AN INITIAL ALLOCATION CASE.

{¶ 37} In his third assignment of error, Father argues the juvenile court erred by ordering him to pay all court costs associated with this case. We disagree.

{¶ 38} Pursuant to Civ.R. 54(D), "[e]xcept when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." "[A]n appellate court cannot reverse a lower court's decision regarding the allocation of costs absent an abuse of discretion." *Nithiananthan v. Toirac*, 12th Dist. Warren Nos. CA2014-02-021, CA2014-02-028, and CA2014-08-114, 2015-Ohio-1416, ¶ 89, citing *Hendricks v. Evertz Technology Serv. U.S.A., Inc.*, 12th Dist. Butler No. CA2011-10-188, 2012-Ohio-2252, ¶ 7. As noted above, "[a]n abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re P.B.*, 2021-Ohio-414 at ¶ 14, citing *Blakemore*, 5 Ohio St.3d at 219. "A decision is unreasonable where it is not supported by a sound reasoning process." *In re L.M.*, 12th Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 22, citing *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 46.

{¶ 39} Despite Father's claims, the juvenile court's decision ordering him to pay all court costs associated with this case was not an abuse of discretion. This holds true despite Father's claim that he did not conduct an "inappropriate amount" of depositions or "purposefully increase" court costs. This case, which should have been a fairly simple proceeding regarding parental rights and responsibilities for one child, J.R., turned into a

contentious ten-day hearing on Father's motion to allocate parental rights and responsibilities for J.R. and Father's motion for contempt. The record indicates the prolonged, combative nature of this case was due primarily to Father rejecting Mother's request to take this case to mediation, as well as Father's unnecessary insistence on litigating every aspect of this case. This includes, but is not limited to, each line of Mother's testimony for which Father had even the slightest bit of disagreement, as well as extensive questioning regarding the drug use of the mother of one of Father's other children, and a checking account belonging to J.R.'s now deceased maternal grandfather. Therefore, finding no error in the juvenile court's decision ordering Father to pay all court costs associated with this case, Father's third assignment of error lacks merit and is overruled.

**Conclusion**

{¶ 40} As with all cases regarding the allocation of parental rights and responsibilities of a child, this case is not about which parent is a better person, but what is in the child's best interest. Upon a full and thorough review of the record, which, as noted above, included a lengthy, multi-day transcript, the juvenile court found it was in J.R.'s best interest to designate Mother as J.R.'s residential parent and legal custodian. This was not error. It was also not error for the juvenile court to deny Father's motion for contempt, nor was it error for the juvenile court to order Father to pay all court costs associated with this case. This holds true despite the fervent nature in which Father attempts to convince this court otherwise. Therefore, for the reasons outlined above, we affirm the juvenile court's decision.

{¶ 41} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.